[Civ. No. 42929. First Dist., Div. Two. Jan. 9, 1980.]

ERNEST S. BROWN, Plaintiff and Appellant, v.
JAMES CRITCHFIELD et al., Defendants and Respondents.

COUNSEL

Cox, Cummins & Lamphere, Paul O. Lamphere and Bernard Cummins for Plaintiff and Appellant.

Miller, Starr & Regalia, Burch Fitzpatrick and Robert T. Cresswell for Defendants and Respondents.

OPINION

**ROUSE, J.**—Plaintiff, Ernest Brown, appeals from summary judgments in favor of defendants, James Critchfield and Leroy Broun.

Plaintiff commenced this action in August 1974 to recover damages for the fraudulent or negligent breach of fiduciary duties allegedly owed to plaintiff by Critchfield, a real estate broker, and Broun, an attorney. The complaint alleged that plaintiff employed defendants, in their professional capacities, to counsel him in the sale of approximately 101 acres of land, and that plaintiff was damaged and his security interest impaired as a proximate result of their negligence, intentional nondisclosures and intentional misrepresentations.

In March 1975, plaintiff filed an amended complaint alleging additional damages. Specifically, he alleged that property taxes were delinquent in the amount of $41,389.21; that the purchasers sold property for $185,000 although they were in default in payment of taxes; that unreleased property declined in value by $600,000; that unreleased property suffered severance damage of $76,104; and that unreleased property declined in value by $30,000 by reason of the creation of a surface water easement. Plaintiff also seeks punitive damages in the sum of $250,000.

Critchfield successfully moved for summary judgment on the ground that plaintiff had alleged no legally recognizable damages and had therefore failed to state a cause of action.[1]

Broun also moved for summary judgment and plaintiff moved for a new trial as to Critchfield. Initially, the court denied Broun's motion and announced its intention to reverse the summary judgment as to Critchfield and to grant plaintiff's motion for new trial. Broun then moved for reconsideration and Critchfield filed a notice of appeal.

Ultimately, the court reversed its position, denied plaintiff's motion for new trial, and granted summary judgment as to each defendant. Plaintiff has appealed from said judgments.

Plaintiff's amended complaint and papers filed in support of, and in opposition to, the motions for summary judgment, contain the following allegations:

In September 1963, plaintiff sold a 101-plus-or-minus-acre parcel of land located in the cities of Fremont and Newark. Defendant Critchfield and Beatrice Broun, wife of defendant Leroy Broun, each purchased an interest in the property.[2] To finance the transaction, the purchasers paid $18,000 down[3] and executed a promissory note for $589,806, which note was secured by a first deed of trust in favor of plaintiff. The terms of the sale provided for nine consecutive annual payments, starting at $18,000 and increasing to $24,000 in 1970, and a balloon installment of $340,000 to be paid on September 3, 1973. As each annual payment was made, three acres were to be released from the lien of the deed of trust.

In September 1963, plaintiff hired Critchfield, a real estate broker, and Broun, an attorney, to negotiate the sales transaction and to repre-

---

[1] If defendants are correct in their contention that plaintiff has failed to state a cause of action, this would be a proper ground for granting summary judgment since "a motion by a *defendant* under section 437c of the Code of Civil Procedure necessarily includes a test of the sufficiency of the complaint ....Motions for summary judgment in such situations have otherwise been allowed as being in legal effect motions for judgment on the pleadings." (*C. L. Smith Co. v. Roger Ducharme, Inc.* (1977) 65 Cal.App.3d 735, 745 [135 Cal.Rptr. 483].)

[2] Beatrice Broun purchased and held the property as her separate property.

[3] The contract price was $6,000 an acre for a total purchase price of $607,806. The downpayment of $18,000 represents approximately 2.97 percent of the total purchase price.

sent his interests until the conclusion of the sale in 1973. For these services, plaintiff agreed to pay to each defendant a percentage of the annual payments received from the purchasers, and he ultimately paid $12,834.10 to Critchfield and $1,403.41 to Broun.

In September 1969, 15.526 acres were released from the lien of the deed of trust and sold to the State of California in a condemnation proceeding. Plaintiff received $94,682 of the $170,786 which the state paid for the taking. As a result of this sale, an additional 37.5 acres were left landlocked and 17.5 acres were left with access problems and in unusual shapes. In addition to the sale of the 15.526 acres, the purchasers also granted a surface water easement over property which was still subject to the lien of the first deed of trust.

In December 1969, the purchasers failed to pay real estate taxes on property which was still subject to the lien. Therefore, under the terms of the deed of trust, they were in default even though they continued to make annual payments to plaintiff in a timely manner. Plaintiff was advised by defendants that the purchasers had been in default on their payment of taxes but had subsequently cured that tax default. Plaintiff was never advised that he had the right to initiate foreclosure proceedings. Subsequent to this default, acreage was released from the lien and sold by the purchasers to third parties for $335,000.[4]

In September 1973, the purchasers defaulted in payment of the final installment on the note. Plaintiff initiated foreclosure proceedings and on April 9, 1974, a foreclosure sale was held on the unreleased acreage still subject to the deed of trust. Plaintiff was the sole bidder and obtained some 57 acres on a credit bid of $345,457.09. At that time there was an outstanding principal balance on the note of $327,124 and accrued interest of $13,862.62. Costs incurred by plaintiff in foreclosure totaled $3,533.84.[5] No taxes or assessments were paid by plaintiff at the time of foreclosure.

The sole issue on appeal is whether plaintiff has alleged damages sufficient to support his causes of action for fraud and negligence. The gist

---

[4]Plaintiff states that since he filed his amended complaint, additional acreage has been sold for $150,000, thereby increasing his claim to $335,000 from the $185,000 pleaded. Plaintiff claims that prior to trial the figure will be amended.

[5]Thus, plaintiff's credit bid of $345,457.09 appears to be $936.63 over his costs and the amount of the secured debt, i.e., $344,520.46.

of defendants' argument is that plaintiff is seeking damages for the impairment of his security, that there was no impairment of security because plaintiff made a full credit bid which extinguished the lien and the security interest, and that plaintiff has therefore suffered no damage. Plaintiff's position is that defendants, as fiduciaries, negligently or fraudulently concealed information from him, thereby causing him damage, and that the actions taken by him at the foreclosure sale are unrelated to his claim for restitution from his fiduciaries.

Each claim of damage must be analyzed in order to determine if the trial court was correct in granting summary judgment in favor of defendants.

■■■ Plaintiff claims that "both Broun and Critchfield counseled [plaintiff] to release 15.526 acres to the State of California in a condemnation proceeding[6] yet failed to advise [him] that severance damages had resulted to 55 acres on which he still retained a deed of trust and to which he had the right to make a claim for such damages." Plaintiff contends that, as a proximate result of this negligence or fraud, his security was impaired to his damage in the sum of $76,104. This claim for damages has no merit.

For the acquisition of the 15.526 acres, the state paid $170,786, of which plaintiff received $94,682, or the equivalent of his contract price of $6,000 per acre. It is established that severance damage *did* result to property secured by plaintiff's deed of trust, namely, the landlocking of 37.5 acres and the creation of access problems and unusual shapes in connection with some 17.5 acres.

In assessing whether damages were sustained by plaintiff, the question to be answered is what would have been the result had plaintiff been advised to make a claim for severance damages in 1969?

Section 1265.225 of the Code of Civil Procedure provides, in part, that "Where there is a partial taking of property encumbered by a lien, the lienholder may share in the award only to the extent determined by the court to be necessary to prevent an impairment of the security...." Although the statutory condemnation law was substantially revised in 1975 (Stats. 1975, ch. 1275, § 2, p. 3455), the Law Revision Commis-

---

[6]There is nothing in the record on appeal pertaining to the condemnation proceeding or an apportionment determination.

sion comment states that section 1265.225 merely "codifies the case law principle that a lienholder is entitled to share in the award only to the extent of the impairment of his security. . . ."

This principle, and what constitutes an "impairment of security," was recently given extensive consideration in *People* ex rel. *Dept. of Transportation* v. *Redwood Baseline, Ltd.* (1978) 84 Cal.App.3d 662 [149 Cal.Rptr. 11] (hereinafter *Baseline*). In announcing which criteria should be used to determine how to apportion a condemnation award between a mortgagor and mortgagee, the court clearly distinguished the situation where foreclosure has already occurred from the situation where the security transaction is to continue in force. In the first situation, the mortgagee would be entitled to payment of no more than the obligation still owing. Thus, "if it turned out at the foreclosure sale that the value of the remaining mortgaged property was equal to the amount of the debt (plus costs of sale), the mortgagee would then be entitled to no part of the damage award." (*Baseline, supra,* at pp. 672-673.) When foreclosure is not imminent, the extent of "impairment of security" is to be determined by such factors, inter alia, as the posttake, pretake, and original ratios of value to debt owing, the amount of the debtor's equity, the nature and salability of the property, and the duration and terms of the loan.

If, in this case, plaintiff had pressed a claim for severance damages, he would have received more than his contract price only to the extent that the remaining security was impaired. Assuming that plaintiff's security was impaired and that he was awarded the $76,104 he is now seeking, such award would not have been in addition to the debt owed to him by the purchasers, but would have been applied to reduce the debt by an equivalent amount. The damaged property would then have been adequate security for this lesser debt. Any compensable diminution in value suffered by reason of the severance which did not impair plaintiff's security could only have been claimed by the purchasers.

It is impossible from the record to determine if, and to what extent, plaintiff's security was impaired as a result of the 1969 taking, or what claim he may then have had against defendants, the state or the purchasers. It is clear, however, from the rationale of *Baseline,* that because plaintiff subsequently made a full credit bid, he ultimately has received all that could have been received and thus has suffered no damage.

Plaintiff contends that "As a further proximate result of the negligence [and fraud] of BROUN [and Critchfield], the fair market value of that portion of said property that plaintiff foreclosed upon after said default decreased in value from the date of said default to October 15, 1973 to [plaintiff's] damage in the sum of $600,000.00." Plaintiff's opening brief does not clarify this tenuous claim for damages.[7] ■ In an action for damages resulting from fraud or negligence, a causal connection between the tortfeasor's actions and the victim's damages must be pleaded and ultimately proved. (4 Witkin, Summary of Cal. Law (8th ed. 1974) §§ 446, 472, 488, pp. 2711, 2732, 2749; 3 Witkin, Cal. Procedure (2d ed. 1971) §§ 450, 573, pp. 2103, 2210.)

■ This claim fails to establish a causal connection between the defendants' failure to give advice and the subsequent diminution in value of the property. The state's taking, not the defendants' omission, caused the diminution in value. As discussed above, any compensable decrease in value caused by the state's taking which did not impair plaintiff's security could only be claimed by the purchasers.

Since plaintiff has failed to show that defendants caused this diminution in value and since his recovery would be limited by his debt, which has been extinguished, plaintiff has not demonstrated compensable damage.

■ Plaintiff alleged in his complaint that as a result of defendants' negligence or fraud, the purchasers were allowed to create a surface water easement over a portion of the property which was ultimately foreclosed upon and that such easement impaired his security and diminished the value of the property in the sum of $30,000.

Again, had plaintiff been advised of the purchasers' intent to create such an easement, or of their having done so, plaintiff could only have brought an action for waste. Damages in an action for waste are measured by the amount of injury to the security caused by the mortgagor's

---

[7]In his brief, plaintiff states that "Brown discovered that in the Fall of 1969, and just prior to the buyers' first default on the payment of the real estate taxes, both Broun and Critchfield counseled Brown to release 15.526 acres to the State of California in a condemnation proceeding yet failed to advise Brown that severance damages had resulted to 55 acres on which he still retained a deed of trust and to which he had the right to make a claim for such damages. . . . *The net result of this failure to properly advise Brown of his rights to protect the security under his deed of trust was a diminution in the fair market value of the 57± acres that Brown ultimately foreclosed upon in April, 1974.*" (Italics added.)

acts. (*Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590, 603 [125 Cal.Rptr. 557, 542 P.2d 981].) Plaintiff would only have a claim for diminution in value if his security was impaired. The fact of his full credit bid conclusively shows that his security was not impaired,[8] thus he has suffered no damage.

▮ Plaintiff seeks $335,000 as the value of the property which defendants counseled plaintiff to release subsequent to the purchasers' 1969 tax default; and $41,389.21 plus interest, redemption fees and penalties, the amount of delinquent taxes allowed to accumulate on the property ultimately foreclosed upon.

Focusing upon the claim for $335,000, plaintiff stresses that he is not claiming "lost profits" or "impairment of security," but rather the "known equivalent in money" of the property which should not have been released. Defendants argue that plaintiff is only alleging that the sales of the released property impaired his security, and thus that plaintiff is precluded from asserting damage.

Defendants' argument is not accurate, since plaintiff also alleges that "as a result of defendants' negligence, the purchasers sold the released property for $335,000,[9] thus depriving [plaintiff] of the receipt of said monies to his damage...." The superficial classification of plaintiff's claim as one for "impairment of security" or one for "damages" should not preclude an investigation into the actual nature of the claim and the legal consequences thereof. "[C]ourts have generally agreed that mistaken labels and confusion of legal theory will not be fatal but the substantial allegations of fact must fit into the pattern of some established right or remedy." (*Lacy* v. *Laurentide Finance Corp.* (1972) 28 Cal.App.3d 251, 256 [104 Cal.Rptr. 547].)

Plaintiff alleges that the sales of the property released after the default in payment of taxes "damaged and impaired the security of [plaintiff] under said deed of trust...."

Defendants cite *Cornelison* v. *Kornbluth, supra,* 15 Cal.3d 590, and *Duarte* v. *Lake Gregory Land and Water Co.* (1974) 39 Cal.App.3d 101 [113 Cal.Rtpr. 893], for the proposition that a mortgagee cannot

---

[8]Plaintiff does not claim that defendants concealed the existence of the easement from him or that he was unaware of its existence at the time he made a full credit bid.

[9]See footnote 4, *ante.*

recover damages for impairment of security from third party tortfeasors if he has made a full credit bid at the foreclosure sale.

In *Cornelison,* the plaintiff, beneficiary of a trust deed, sought damages for waste[10] against the defendant, successor in interest of the owner-trustor, for failing to properly maintain and care for the property (a single family dwelling) securing the balance of the purchase price. Prior to instituting the action, the plaintiff had foreclosed and obtained the property upon a full credit bid. The California Supreme Court affirmed summary judgment in favor of defendant, holding that the plaintiff's full credit bid extinguished the lien, thereby establishing that there was no impairment to the security and thus no waste.

*Duarte* was an action for declaratory relief between the present and past owners of a motel, each claiming the exclusive ownership of insurance proceeds. In 1969, the motel was damaged by a mudslide resulting from the negligence of Lake Gregory Land and Water Co., which paid to the joint account of plaintiff and defendant the sum of $45,000. At the time of the mudslide, plaintiff owned the motel and defendant held a promissory note secured by a deed of trust on the motel. Subsequent to the damage, the plaintiff defaulted and the defendant initiated foreclosure proceedings, ultimately purchasing the motel for the unpaid balance of the note plus interest and the costs of the sale. The appellate court held that the plaintiff, past owner, was entitled to the entire fund of $45,000. The court reasoned that the defendant had no security interest to be impaired, having extinguished the debt and the lien by his full credit bid. (Pp. 105-106.)

■ From *Cornelison, Duarte* and *Baseline,* and the cases cited therein, the following propositions are clear: A mortgagee may maintain an action for waste against either his mortgagor or a third party tortfeasor. A mortgagee may share in an insurance award, a condemnation award, and a damage award obtained by the mortgagor. In all of the above cases the mortgagee's recovery is limited by the extent of the impairment of his security. The extent of impairment of security may be established by reference to various factors but, in any event, a full credit bid by the mortgagee conclusively establishes that there has been no impairment of security and thus precludes any recovery.

---

[10]Section 2929 of the Civil Code provides that "No person whose interest is subject to the lien of a mortgage may do any act which will *substantially impair the mortgagee's security*." (Italics added.)

Real property, as security, affords a mortgagee his primary, and in many cases his sole, means of repayment of a debt should the mortgagor default. Generally speaking, impairment of security is that circumstance where the mortgaged property's value no longer assures satisfaction of the debt. Here, plaintiff alleges that his security was impaired by his fiduciaries' actions and nondisclosures. He appears to be saying that because of the continuing tax default, and because of the severance damage, the property remaining as security was rendered inadequate to satisfy the debt then owed. Stated differently, the risk that plaintiff assumed under the original land sale contract was increased without his knowledge and consent and in derogation of his rights under the contract. Under the rationale of *Duarte, Cornelison* and *Baseline,* however, plaintiff is precluded from recovering for this impairment of security because it has been established, by his full credit bid, that his security was sufficient to satisfy the debt.

However, plaintiff also alleges that, because of defendants' failure to disclose the tax default in 1969, property was released and resold to his damage. That Broun did not directly profit is irrelevant since a fiduciary is liable for a breach of the duty of disclosure even though he did not personally profit. (*St. James Armenian Church of Los Angeles* v. *Kurkjian* (1975) 47 Cal.App.3d 547, 553 [121 Cal.Rptr. 214].)

Defendants argue that this claim is an attempt to obtain a deficiency judgment under the guise of an action for negligence or fraud and, as such, runs contrary to the social policy of the antideficiency legislation. A review of such legislation, therefore, is necessary.

Under section 726 of the Code of Civil Procedure, there may be but one action for the recovery of a debt secured by a deed of trust. That action is foreclosure. Section 580b of the Code of Civil Procedure prohibits a mortgagee from obtaining a deficiency judgment upon foreclosure of a purchase money trust deed. And, section 580d of the Code of Civil Procedure provides that no deficiency judgment may be obtained where the property securing a trust deed has been sold under a power of sale. These so called "antideficiency" statutes "indicate a considered course on the part of the Legislature to limit strictly the right to recover deficiency judgments, that is, to recover on the debt more than the value of the security." (*Brown* v. *Jensen* (1953) 41 Cal.2d 193, 197 [259 P.2d 425].) This legislation was enacted to counteract the situation which prevailed during the depression of the 1930's where a

mortgagee would purchase the property at a foreclosure sale at a depressed price and then hold the mortgagor liable for the deficiency. The legislation was intended to place the risk of the transaction on the mortgagee to prevent the overvaluation of security and to serve as a stabilizing factor in land sales. (*Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 40, 42 [27 Cal.Rptr. 873, 378 P.2d 97].)

In determining the effect of such antideficiency legislation on a statutory action for waste, the court in *Cornelison* started with the premise that "damages in an action for waste are measured by the amount of injury to the security caused by the mortgagor's acts. . . ." (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d 590, 602-603.) The court stated that such legislation was enacted to prevent an aggravation of a downturn in property values which would result if a defaulting mortgagor lost not only the property but also became personally liable for the debt. From this, the court concluded that a mortgagee would be precluded from maintaining an action for waste against a mortgagor when the decline in value of the security was due to economic conditions, but not when due to the mortgagor's bad faith actions. Though concluding that the plaintiff in that action was not barred by either sections 580b or 580d from maintaining an action for bad faith waste, the court denied recovery "since [the plaintiff could not] establish any impairment of security, the lien of the deed of trust or mortgage having been theretofore extinguished by his full credit bid and all his security interest in the property thereby nullified." (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d 590, 607.)

In California, it is clear that, as between a mortgagee and mortgagor, the mortgagee's interests are defined by statute and by the terms of the deed of trust. The benefit of his bargain is the interest on the note. The sole remedy in the case of the mortgagor's default is the sale of the secured property; and the limit of any recovery, whether from the sale of the property, an action for bad faith waste or for an apportionment of a damage award, is the amount of the obligation still owing.

The antideficiency statutes do not expressly apply to the instant case, nor does the policy motivating their enactment indicate that they should bar recovery of damages caused by a fiduciary's wrongdoing merely because the transaction concerned real property. Plaintiff is not seeking to recover on a debt, nor is this a situation where there are conflicting claims by a mortgagor and mortgagee to the same funds. If plaintiff is

allowed to prosecute his claim, and be compensated for his damages, a downward spiral of land values will not be encouraged; mortgagors will not be liable for double recovery; and overvaluation of security will not prevail. The risk inherent in secured land transactions will remain on the mortgagee, but that risk should not be expanded to include the assumption of damages resulting from a fiduciary's negligence or fraud.

Defendants argue that plaintiff received the benefit of his bargain, i.e., that he received the full contract price for the acreage released and, by his bid, received land valued in excess of the remaining indebtedness. But the question arises as to which bargain should be looked to in order to determine whether plaintiff received full benefit. It is true that, under the bargain with the purchasers, plaintiff received all that was contracted for. Under the bargain with his fiduciaries, however, he did not receive the full benefit, namely, fulfillment of the duty of highest good faith and of full disclosure. (*Timmsen* v. *Forest E. Olson, Inc.* (1970) 6 Cal.App.3d 860, 871 [86 Cal.Rptr. 359].)

Having concluded that plaintiff's claim for damages is not precluded by either his full credit bid, his sales contract price nor antideficiency legislation, we must next proceed to assess damages.

■ Although section 3343 of the Civil Code provides the usual measure of damages relating to fraud in the sale of property, it is clear that if the defrauding party stands in a fiduciary relationship to the victim, the measure of damages governing compensation for torts will apply. (*Pepitone* v. *Russo* (1976) 64 Cal.App.3d 685, 688-689 [134 Cal.Rptr. 709].) Tort damages are governed by section 3333 of the Civil Code which provides, in part, "the measure of damages...is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

In California, "'Uncertainty as to the fact of damage, that is, *as to the nature, existence or cause of the damage, is fatal.'*" (*Griffith Co.* v. *San Diego Col. for Women* (1955) 45 Cal.2d 501, 516 [289 P.2d 476, 47 A.L.R.2d 1349].) ■ In deciding whether plaintiff has sufficiently alleged the *existence,* as opposed to the amount, of damage, the case of *Block* v. *Tobin* (1975) 45 Cal.App.3d 214 [119 Cal.Rptr. 288], is helpful. In that case, plaintiffs, prospective bidders at a trustee's sale, sought to recover the difference between fair market value of, and the price actually paid for, property sold to the defendant beneficiary at a mock public auction. The court held that the plaintiffs were not entitled

to recover this amount, since they did not allege that they would have been the successful bidders had a proper sale been held.

Had the value of the property released and resold after the tax default been plaintiff's only allegation of damage, he would, under *Block v. Tobin, supra,* have failed to show the existence of damage. Reviewing the possible consequences had plaintiff been advised of the tax default and his right to institute foreclosure proceedings, it is clear, however, that plaintiff *was* damaged for the following reasons:

(1) If the purchasers had cured the default, plaintiff would not now be liable for the delinquent taxes, penalties and redemption fees.

(2) If plaintiff had foreclosed and entered a full credit bid, he would now have the property or its equivalent value in money, and would not now be liable for tax penalties and redemption fees.

(3) If another bidder had obtained the property, plaintiff would have recovered foreclosure costs[11] and would not now be liable for the delinquent taxes, penalties and redemption fees.

The fact that it cannot be proved which one of these circumstances would have resulted does not preclude plaintiff from pursuing his claim. ■ "...'[I]t appears to be the general rule that while a plaintiff must show with reasonable certainty that he has suffered damages by reason of the wrongful act of defendant, once the cause and existence of damages have been so established, recovery will not be denied because the damages are difficult of ascertainment.'" (*Bertero v. National General Corp.* (1967) 254 Cal.App.2d 126, 150 [62 Cal.Rptr. 714].)

■ Plaintiff alleges that he is entitled to the price which the purchasers obtained. This assertion is incorrect, since it has not been established what the fair market value of the property was prior to the purchasers' expenditures or improvements; nor has plaintiff considered the fact that he has received, under the contract with the purchasers, what he would have had to bid in order to obtain the property. Nonetheless, a failure to plead according to the correct law of damages is not fatal. (*Bice v. Stevens* (1955) 136 Cal.App.2d 368, 374 [289 P.2d 95].)

---

[11]Section 2924h, subdivision (b), of the Civil Code, provides, in part, that "The present beneficiary...shall have the right to offset his bid(s) only to the extent of the total amount due him *including the trustees fees and expenses.*" (Italics added.)

We conclude that plaintiff may not claim, as damages, any impairment to his security, since his full credit bid at the foreclosure sale conclusively established that his security had not been impaired. However, plaintiff's claim for other damages proximately caused by defendants' negligence or fraud is not prohibited by the policy of the antideficiency legislation. Plaintiff should be allowed to prove and recover such damages. Accordingly, the summary judgments must be reversed.

Judgments reversed.

Taylor, P. J., and Miller, J., concurred.