[No. C015168. Third Dist. Jan. 14, 1994.]

GN MORTGAGE CORPORATION, Plaintiff and Appellant, v.
FIDELITY NATIONAL TITLE INSURANCE COMPANY et al.,
Defendants and Respondents.

### COUNSEL

Hill, Wynne, Troop & Meisinger and Samuel E. Bramhall for Plaintiff and Appellant.

Marion Anna Aaron, Timothy J. Stock, Leland, Parachini, Steinberg, Flinn, Matzger & Melnick and Paul J. Matzger for Defendants and Respondents.

### OPINION

**PUGLIA, P. J.**—In this appeal we consider whether a full credit bid at a nonjudicial foreclosure sale extinguishes all claims of a lender against the participants in a tortious conspiracy to defraud the lender, none of whom is the buyer. We shall conclude it does. The trial court also concluded it did and entered summary judgment for the defendant conspirators. Plaintiff lender contends its claims were not extinguished because defendants were not parties to the original loan transaction and because the damages suffered are measured by out-of-pocket losses, not the extent of impairment of the security. We shall affirm.

I

Because the only issue raised in the trial court was the effect of the full credit bid on plaintiff's damages, we shall accept as true for purposes of this appeal those allegations of the complaint relating to tortious misconduct.

Defendants and others conspired fraudulently to induce plaintiff to finance a fictitious sale of property at an inflated price. A coconspirator purchased the property for $359,000 on or about May 25, 1990, and thereafter purportedly sold it to Jacinto Rodriguez for $562,000. Rodriguez never agreed to purchase and in fact never did purchase the property and did not know his name was being used by the conspirators as purchaser.

Defendant Fidelity National Title Insurance Company (Fidelity) acted as escrow agent for the transaction and issued a policy of title insurance. Defendant American Equities Financial Corporation (American Equities) submitted to plaintiff a forged loan application accompanied by other false documentation. Relying on these false documents, plaintiff loaned $449,600, ostensibly to Rodriguez, for the purchase and received from defendants a promissory note in that amount secured by a deed of trust on the property both of which bore the forged signature of Rodriguez. Portions of the loan proceeds were disbursed to various conspirators.

The note eventually went into default and plaintiff initiated nonjudicial foreclosure. At the foreclosure sale, plaintiff acquired the property by entering a full credit bid of $485,162.74, being the full amount of unpaid principal and interest plus fees and expenses of foreclosure. Plaintiff later sold the property, receiving net proceeds of $294,767.82.

Plaintiff initiated this action against the various conspirators alleging fraud, conversion, negligence, and breach of contract.[1] Fidelity moved for summary judgment based on the full credit bid and the trial court granted the motion. Thereafter, in order to facilitate appeal, plaintiff dismissed the complaint without prejudice as to the individual conspirators and stipulated to joinder of American Equities in Fidelity's summary judgment motion. The trial court amended its order to grant summary judgment also to American Equities nunc pro tunc.

## II

The seminal case on the effect of a full credit bid in nonjudicial foreclosure is *Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590 [125 Cal.Rptr. 557, 542 P.2d 981] (hereafter *Cornelison*). In that case, the plaintiff sold a residence to defendant taking back a promissory note and deed of trust. After default on the note, the plaintiff caused the property to be sold at a trustee's sale and purchased it by a full credit bid. The plaintiffs then filed an action for breach of contract and waste.

---

[1]The negligence and breach of contract claims were alleged against Fidelity alone and related respectively to failure properly to supervise employees and breach of the title insurance contract. The breach of contract claim was later dropped by plaintiff.

The court held the contract claim was barred by the antideficiency statute.[2] Regarding the waste claim, the court held the antideficiency statute also bars any recovery for losses associated with a market downturn. Where, for example, waste is caused by the purchaser's inability to make needed maintenance or repairs because of poor economic conditions, it would frustrate the purpose of the antideficiency statute to permit foreclosure and recovery of waste damages. However, since waste claims based on the purchaser's bad faith conduct would not implicate the purposes of the antideficiency statute, they would not be precluded. (15 Cal.3d at pp. 603-604.)

Nevertheless, the court held the full credit bid precluded recovery for bad faith waste. Because the measure of damages for waste is the amount of impairment of the security, and because the full credit bid established the value of the property at the remaining indebtedness plus costs, there was no impairment and hence no damages. (15 Cal.3d at p. 606.)

█ Plaintiff contends the full credit bid rule enunciated in *Cornelison* is inapplicable where claims are asserted not against the purchaser but against third parties. According to plaintiff, where the purchaser is not involved, the purposes of the antideficiency statute, and the full credit bid rule stemming from it, are not implicated.

Plaintiff misconceives the holding in *Cornelison*. The full credit bid rule is concerned with damages and proximate causation. It is independent of the antideficiency statute. In *Cornelison*, the court invoked the rule despite first finding the antideficiency statute did not bar recovery for bad faith waste. According to the court, the full credit bid extinguished the claim not because the antideficiency statute was inapplicable but because the measure of damages for waste is the diminution in value of the security, and the full credit bid set the value at the outstanding indebtedness. Hence, the plaintiff had not been damaged. As explained by the court: " '[T]he purpose of the trustee's sale is to resolve the question of value and the question of potential forfeiture through competitive bidding . . . .' [Citations.] In *Smith* v. *Allen* (1968) 68 Cal.2d 93, 95-96 [65 Cal.Rptr. 153, 436 P.2d 65], this court held that a nonjudicial foreclosure sale, if regularly held, finally fixes the value of the property therein sold." (15 Cal.3d at pp. 606-607.)

---

[2]The statute involved in *Cornelison*, Code of Civil Procedure section 580b, reads in relevant part: "No deficiency judgment shall lie in any event after a sale of real property or an estate for years therein for failure of the purchaser to complete his or her contract of sale, or under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property or estate for years therein, or under a deed of trust or mortgage on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling occupied, entirely or in part, by the purchaser."

In *Brown* v. *Critchfield* (1980) 100 Cal.App.3d 858 [161 Cal.Rptr. 342], the court applied the full credit bid rule to an action by the seller/lender against a real estate broker and attorney hired to represent his interests in connection with the sale of a 101-acre tract. Several years after the sale, a portion of the property was sold to the government in condemnation proceedings. This sale left the remaining property less valuable. After the purchasers became delinquent in the payment of property taxes, a portion of the property was released from the lien and sold. The purchasers ultimately defaulted and the seller purchased the remaining acreage by a full credit bid at foreclosure.

The seller claimed the defendants failed to advise him of his right to seek severance damages for impairment of the remaining security at the time a portion was sold in condemnation. The seller also claimed the defendants permitted a surface water easement to be created on the property. The court held damages for these claims were measured by the impairment of security and thus the claims were extinguished by the full credit bid. (*Brown* v. *Critchfield* 100 Cal.App.3d, *supra*, at pp. 864-869.)[3]

*Western Fed. Savings & Loan Assn.* v. *Sawyer* (1992) 10 Cal.App.4th 1615 [13 Cal.Rptr.2d 639] is virtually identical to the present case. The defendant owned property and entered into an agreement to sell it for $115,000 of which the buyers were to pay $23,000 down and finance the balance of $92,000. The loan application was referred to the plaintiff through a mortgage broker and the plaintiff agreed to fund the loan. The loan went into default after three payments. Plaintiff obtained the property in a nonjudicial foreclosure by a full credit bid. Thereafter, plaintiff incurred expenses in maintaining and preparing the premises for resale. Plaintiff ultimately sold the property for $96,500. Plaintiff sued defendant and the buyers alleging they conspired fraudulently to induce plaintiff to make the loan. The jury gave judgment for plaintiff finding defendant was part of a conspiracy to defraud plaintiff.

Relying on *Cornelison*, the appellate court reversed, holding the plaintiff's claim against defendant, who was not the buyer in the fraudulent loan transaction, was precluded by the full credit bid. According to the court: "The analysis in *Cornelison* concerning full credit bids has been consistently applied in various contexts to determine whether a lender's security has been

---

[3]The seller also sought damages for the value of the property the defendants counseled the seller to release after the tax default, and the amount of delinquent taxes allowed to accumulate on the property ultimately foreclosed upon. The court reversed summary judgment for defendants as to these claims because they were not premised on any decrease in the value of the remaining security. (100 Cal.App.3d at pp. 870-871.)

impaired and therefore whether the lender has been damaged. Thus, . . . the full credit bid rule applies whether the loan is for commercial or residential property, or whether the loan is for construction or is a purchase money loan. [Citations.] *This is true whether damages are sought from the borrower, seller or any of their respective successors or predecessors in interest or other third parties.*" (10 Cal.App.4th at pp. 1620-1621, italics added.)

Plaintiff contends *Western Fed.* was wrongly decided and is not supported by the authorities cited therein or out-of-state decisions. We are unpersuaded. None of the cases upon which plaintiff relies stands for the proposition the rule with respect to full credit bids is inapplicable to claims against third parties. (See, e.g., *Brown* v. *Critchfield, supra,* 100 Cal.App.3d 858; *Commonwealth Mortgage Assurance Co.* v. *Superior Court* (1989) 211 Cal.App.3d 508 [259 Cal.Rptr. 425]; *Guild Mortgage Co.* v. *Heller* (1987) 193 Cal.App.3d 1505 [239 Cal.Rptr. 59].)

Nor are we persuaded by the out-of-state authorities cited by plaintiff. Although the court in *Glenham* v. *Palzer* (1990) 58 Wn.App. 294 [792 P.2d 551] refused to apply the full credit bid rule, there is no indication in the decision of the nature of damages sought by the plaintiff, i.e., impairment of security or other losses. In *Willis* v. *Realty Country, Inc.* (1991) 121 Idaho 312 [824 P.2d 887], a claim was asserted against the original seller who damaged the property while foreclosure was pending. The plaintiff incurred expenses repairing the premises before making a full credit bid and the court held those expenses could be recovered. These cases are inapposite.

Plaintiff contends, even assuming the full credit bid rule applies to actions against third parties, it is inappropriate here where damages are measured not by the impairment of security, as in *Cornelison,* but by out-of-pocket losses. Plaintiff relies on Civil Code section 3333, which reads: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." Plaintiff argues it is not seeking damages for impairment of security but the out-of-pocket expenses incurred by being forced to purchase the property at foreclosure and resell it.

Plaintiff's argument is sophistical. However characterized, plaintiff's claim is that it loaned money on the security of property valued at much less than the amount of the loan. Consequently, after foreclosure and resale, plaintiff was unable to recover the full amount of the indebtedness.

In a tort claim, there must be a causal relationship between the alleged misconduct and the damages sought. (*Commonwealth Mortgage Assurance*

*Co.* v. *Superior Court, supra,* 211 Cal.App.3d at p. 518.) It is not enough the plaintiff was injured. Such injury must have been caused by the misconduct.

The primary measure of damages for tortious acts against a secured lender is the extent of impairment of the security, i.e., the amount by which the indebtedness exceeds the actual value of the security. (*Cornelison, supra,* 15 Cal.3d at p. 606; *Sumitomo Bank* v. *Taurus Developers, Inc.* (1986) 185 Cal.App.3d 211, 217-218 [229 Cal.Rptr. 719].) A foreclosure sale establishes the actual value of the security. (*Cornelison, supra,* 15 Cal.3d 590.) Where the secured property is sold at auction for an amount sufficient to satisfy the indebtedness, there is no impairment of security and the secured party is not damaged. (*Commonwealth Mortgage Assurance Co.* v. *Superior Court, supra,* 211 Cal.App.3d at p. 518.) Any damage suffered thereafter is not a proximate result of the fraudulent transaction.[4]

In response to Fidelity's summary judgment motion, plaintiff submitted the declaration of its senior vice-president of loan administration detailing plaintiff's losses as follows:

(1) $182,869.51 (the outstanding indebtedness of $449,227.81 plus accrued interest to the date of foreclosure of $28,409.52 less the amount realized upon resale of $294,767.82)

(2) $3,797.08 (trustee fees and costs)

(3) $9,530.58 (property taxes)

(4) $1,435.35 (cleaning, appraisal and securing and winterizing costs)

(5) $3,640.00 (hazard insurance)

(6) $298.71 (utilities)

---

[4]Although the court in *Guild Mortgage Co.* v. *Heller, supra,* 193 Cal.App.3d 1505 found damage suffered after a full credit bid a proximate result of the fraudulent transaction, the situation there was unique. After extending the loan, the plaintiff sold the note to the Federal Home Loan Mortgage Corporation (FHLMC). Upon default, FHLMC purchased the property at foreclosure by a full credit bid. The plaintiff then purchased the property from FHLMC pursuant to government regulation and ultimately suffered $50,000 in damages.

The plaintiff was permitted to recover from the defrauding parties under these circumstances because FHLMC, not the plaintiff, made the full credit bid. Since the plaintiff was no longer the secured party, its damages were not measured by the impairment of security but by its actual damages. (193 Cal.App.3d at p. 1514.) The decision does not explain the nature of the $50,000 in damages sought. It is suggested such damages were unilaterally set by the plaintiff "by means of some unknown private transaction." (193 Cal.App.3d at p. 1516 (conc. opn. of Gates, J.).)

In addition, plaintiff's responses to interrogatories list as damages $10,000 in attorney fees and $18,900 in broker commissions.

By far the majority of these claimed damages is represented by item (1) which simply states plaintiffs' loss due to impairment of security as measured by the resale price. However, the value of the property is established by the full credit bid, which included the outstanding indebtedness plus accrued interest. Thus plaintiff did not suffer the loss claimed in item (1). Recovery of the amount in item (2) is also precluded because trustee fees and costs are included in the full credit bid. And because the full credit bid, $485,162.74, actually exceeded the indebtedness, accrued interest, trustee fees and costs by $3,728.33, this difference likely represents a portion of the accrued taxes reflected in item (3) which, perforce, cannot be recovered.

As to the remaining items claimed by plaintiff, these are all expenses associated with ownership of the property after its purchase at foreclosure. These items also are not recoverable because they were not proximately caused by the defendants' tortious conduct. Once plaintiff purchased the property, it obtained an asset presumably valued at the amount of the indebtedness plus accrued expenses. At that point plaintiff had not been damaged. Thereafter, plaintiff was free to use the property as it desired or to resell it. Any losses incurred thereafter were not proximately caused by the defendants' tortious conduct but by plaintiff's business decisions in disposing of the property.[5]

Defrauding parties should certainly be held accountable for the damages caused by their misconduct. However, because a foreclosure sale is designed to establish the value of the property sold, plaintiff's full credit bid set the value of the property at an amount sufficient to satisfy the indebtedness and all accrued expenses. Therefore, defendants' tortious conduct did not cause any damage. Any losses suffered thereafter resulted either from a severe market downturn or from defendants' exercise of business judgment.

---

[5]For example, if plaintiff purchased the property at foreclosure with the intent of reselling it, the price paid for the property should have reflected the costs plaintiff expected to incur before such resale, including broker fees, taxes, insurance, etc. That plaintiff did not consider these expenses at the time merely exacerbates the folly of bidding $485,162.74 for property apparently valued at much less.

Plaintiff contends its decision to make a full credit bid, "an act which *at worst* cound amount to negligence" (original italics), should not preclude recovery for defendants' fraud. We agree comparative negligence does not vitiate fraud. However, this is not a question of concurrent causes for damage. It is a matter of no legally cognizable damage. By virtue of the full credit bid, any losses suffered by plaintiff were not proximately caused by the alleged fraud.

The judgment is affirmed. Defendants to recover their costs on appeal.[6]

Davis, J., and Scotland, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 12, 1994. Baxter, J., was of the opinion that the petition should be granted.

---

[6]Plaintiff's request for judicial notice of appellant's brief in *Sumitomo Bank* v. *Taurus Developers, Inc., supra,* 185 Cal.App.3d 211 is denied, as that pleading has no relevance to the present dispute.