[No. A064772. First Dist., Div. One. June 23, 1995.]

ENDOLIA ROMO, Plaintiff and Appellant, v.
STEWART TITLE OF CALIFORNIA, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.

**COUNSEL**

Bruce Pritzker for Plaintiff and Appellant.

Liccardo, Rossi, Sturges & McNeil and Ronald R. Rossi for Defendant and Respondent.

**OPINION**

**DOSSEE, J.**—This is the second appeal before us in this action by a home seller against an escrow agent for various misdeeds which allegedly occurred in connection with the sale of plaintiff's house. In the first appeal we held that the trial court properly concluded that plaintiff's claims for impairment of security were barred by plaintiff's full credit bid at the trustee's sale. But we also held that plaintiff's full credit bid did not necessarily bar plaintiff's other claims of damages, and we remanded for further proceedings. On remand, defendant moved for summary judgment, arguing that all other

claims asserted by plaintiff were related to the impairment of her security and, hence, were barred by the full credit bid. The trial court agreed and granted defendant's motion for summary judgment. Plaintiff appeals.

## FACTS

In 1981, plaintiff decided to sell her home in Daly City to move to Valley Springs, California. She retained James Rabb as her real estate agent, who submitted a purchase offer on her behalf for a house in Valley Springs, California. That offer was eventually accepted by the sellers. Because plaintiff's purchase offer was contingent upon the sale of her Daly City home, Rabb offered to buy that house from plaintiff through his realty company. Escrow was opened for both transactions with defendant Stewart Title of California.

The purchase agreement between plaintiff and the named buyers (Tim and Carol Dews) called for a purchase price of $123,000, consisting of a $12,000 cash deposit, a new loan to be secured by a first deed of trust, with plaintiff to carry a loan of $12,300 payable over five years secured by a second deed of trust.[1]

Both transactions closed. In connection with the sale of plaintiff's Daly City home, a loan for $98,400 secured by a first deed of trust was issued by Great Western. Accordingly, plaintiff received two promissory notes from the buyers, one for $12,300 and another for $18,470, secured by a second and a third deed of trust, respectively.

From the Great Western loan proceeds, $61,100 was credited to plaintiff's purchase of the Valley Springs house. Plaintiff received approximately $23,460 in cash. In October 1981, plaintiff moved into her new home in Valley Springs.

By November 1981 plaintiff was concerned that no payments had been made on the promissory notes. She consulted an attorney, who exercised the power of sale under the third deed of trust and instituted nonjudicial foreclosure proceedings. At the trustee's sale, plaintiff's attorney entered a bid on her behalf in the amount of $20,363, which represented the full amount of the loan secured by the third deed of trust ($18,470) plus interest and costs. Plaintiff received a trustee's deed on the property. She then listed the property for sale for $140,000.

---

[1] The record is not clear on the relationship, if any, between the Dewses and Rabb or Rabb's realty company. Plaintiff has intimated, but offered no showing, that the Dewses were either agents of Rabb or fictitious names used by Rabb.

By this time, the loan from Great Western was also in default. In March 1982 Great Western gave notice of default to plaintiff, reciting arrearages due of $6,850. Plaintiff did not pay off the arrearages, nor did she take any other steps to avoid foreclosure. Great Western eventually foreclosed, and plaintiff lost the property.

## Procedural History

Plaintiff sued the real estate broker (Rabb), his affiliated real estate companies, the purchasers of her Daly City home (the Dewses), and the escrow agent (Stewart Title). We are concerned in this appeal only with plaintiff's claims against Stewart Title.

Plaintiff alleges that the entire sale transaction on her Daly City home was a fiction engineered by Rabb. The Dewses never took possession of the Daly City house and never paid any money on any of the three loans. Plaintiff alleges that Rabb was not a licensed broker and that the documents purportedly signed by the purchasers were forged.

With respect to Stewart Title, plaintiff's claims center on the fact that the seller's (plaintiff's) escrow instructions do not reflect the $18,470 loan carried by plaintiff and secured by the third deed of trust. The seller's instructions indicate that plaintiff was to receive $100,783 at closing: $123,000 purchase price less the loan secured by the second deed of trust ($12,300) less closing costs. Plaintiff actually received far less: the $61,000 credited to her purchase of Valley Springs and $23,460 in cash. The difference equals the amount of the loan from plaintiff to the purchasers secured by the third deed of trust.

Plaintiff admitted at the first trial and the documentary exhibits confirm that among the papers signed by plaintiff as "read and approved" at closing was a copy of the buyers' promissory note to plaintiff for $18,470. It is undisputed that this note was secured by a third deed of trust. Although the escrow instructions did not call for Stewart Title to record that deed of trust, plaintiff eventually recorded it herself.

In her first amended complaint, plaintiff alleged four causes of action against Stewart: (1) fraud and concealment in inducing plaintiff to sign the documents pertaining to the sale of her house; (2) conversion of $18,470 of plaintiff's money; (3) negligent performance of fiduciary duties; and (4) fraud in carrying out a sham sale transaction.

Following this court's reversal in the first appeal, defendant Stewart moved for summary judgment on the ground that all of the causes of action

were precluded by the full credit bid doctrine. The trial court eventually agreed and granted the motion.[2] In urging us to affirm the trial court's order, defendant Stewart makes the same contention it did below, that all of plaintiff's causes of action are barred by the fact that plaintiff purchased the property by making a full credit bid.

## DISCUSSION

### I.  *The Full Credit Bid Rule*

■  At a nonjudicial foreclosure sale the lender-beneficiary is entitled to make a credit bid up to the amount of his indebtedness, since it would be pointless to require the bidder to tender cash that would only be immediately returned to him. (Civ. Code, § 2924h, subd. (b); *Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590, 607 [125 Cal.Rptr. 557, 542 P.2d 981].) A credit bid equal to the amount of the unpaid principal and interest, plus the costs, fees and other expenses of the sale, is known as a "full credit bid." (*Id.* at p. 606, fn. 10.)[3] When the lender purchases the property by making a full credit bid, he effectively is paid the full amount of his debt; consequently, the debt is satisfied and the lien is extinguished. (Civ. Code, § 2910; *Passanisi* v. *Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, 1503 [236 Cal.Rptr. 59]; *Duarte* v. *Lake Gregory Land and Water Co.* (1974) 39 Cal.App.3d 101, 104-105 [113 Cal.Rptr. 893].) This is true as well for a foreclosing junior lienholder. That is, when the junior lienholder makes a full credit bid and acquires the property at the trustee's sale, the debt secured by the junior lien is satisfied and the lien is extinguished. (*Ballengee* v. *Sadlier* (1986) 179 Cal.App.3d 1, 5 [224 Cal.Rptr. 301]; see *Caruso* v. *Great Western Savings* (1991) 229 Cal.App.3d 667, 674 [280 Cal.Rptr. 322]). However, the junior lienholder, like any other successful purchaser, takes the property subject to the senior lien. (*Davidow* v. *Corporation of America* (1936) 16 Cal.App.2d 6, 11-12 [60 P.2d 132]; see *Brown* v. *Copp* (1951) 105 Cal.App.2d 1, 6-8 [232 P.2d 868].)

In *Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at pages 605-606, the Supreme Court held that a lender's recovery of damages for bad faith waste

---

[2]At first, the trial court denied the motion and allowed plaintiff the opportunity to file a second amended complaint clarifying damages unrelated to the impairment of security. Plaintiff filed a second amended complaint, amending primarily the cause of action for conversion. The trial court then granted defendant's motion for summary judgment on the three other causes of action but denied the motion as to the cause of action for conversion. However, upon defendant's motion for reconsideration, the trial court reconsidered and granted summary judgment on the conversion cause of action as well.

[3]The lender-beneficiary is not required to make a full credit bid. He may bid whatever amount he thinks the property is worth. Indeed, many creditors enter low bids to provide access to additional security or additional funds. (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at p. 607.)

may be precluded by what has come to be known as the full credit bid rule.[4] The court reasoned that in an action for waste the measure of damages is the amount of the impairment of the security (i.e., the amount by which the value of the security is less than the outstanding indebtedness). The lender's full credit bid establishes the value of the security as being equal to the amount of the indebtedness. Hence, the lender cannot establish any impairment of security and cannot recover any damages for waste.[5] (*Id.* at pp. 606, 607.)

The full credit bid rule has never again been applied by the Supreme Court, but the Courts of Appeal have applied it beyond actions for waste so as to preclude recovery by the lender of damages from the borrower for fraud in the loan transaction. (*Commonwealth Mortgage Assurance Co.* v. *Superior Court* (1989) 211 Cal.App.3d 508, 518-521 [259 Cal.Rptr. 425]; *Sumitomo Bank* v. *Taurus Developers, Inc.* (1986) 185 Cal.App.3d 211, 220 [229 Cal.Rptr. 719].) The rule has also been applied to fraud actions against third parties. (*GN Mortgage Corp.* v. *Fidelity Nat. Title Ins. Co.* (1994) 21 Cal.App.4th 1802, 1807 [27 Cal.Rptr.2d 47]; *Western Fed. Savings & Loan Assn.* v. *Sawyer* (1992) 10 Cal.App.4th 1615 [13 Cal.Rptr.2d 639].)[6] In *GN Mortgage Corp.* the court reasoned that "The primary measure of damages for tortious acts against a secured lender is the extent of impairment of the security, i.e., the amount by which the indebtedness exceeds the actual

---

[4]When a lender-beneficiary exercises his power of sale under a deed of trust, the debt secured by that deed of trust is deemed satisfied, and the lender may not recover a deficiency judgment. (Code Civ. Proc., § 580d.) The antideficiency statutes do not, however, preclude the lender from recovering damages from the debtor for waste, if the waste was committed in bad faith. (See *Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at pp. 605-606 [dictum].)

[5]Although the lender may not obtain a deficiency judgment after a foreclosure by power of sale (Code Civ. Proc., § 580d), the foreclosure does not extinguish the debt. The lender retains other remedies for collection of the unpaid balance of the debt. (See *Hatch* v. *Security-First Nat.* Bank (1942) 19 Cal.2d 254 [120 P.2d 869]; *Kerivan* v. *Title Ins. & Trust Co.* (1983) 147 Cal.App.3d 225, 231 [195 Cal.Rptr. 53].) Thus, if the lender-beneficiary enters a bid below the full amount of the outstanding indebtedness (and is successful in acquiring the property), then in an action for impairment of security, he may recover the difference between the amount of his bid and the full amount of the outstanding indebtedness. (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at p. 607.)

[6]Courts in at least two other states have concluded that the full credit bid rule applies only to actions against borrowers; it does not apply to actions against third parties. (*Willis* v. *Realty Country, Inc.* (1991) 121 Idaho 312 [824 P.2d 887]; *Glenham* v. *Palzer* (1990) 58 Wn.App.294 [792 P.2d 551].) In California, the courts are divided. (Compare *Brown* v. *Critchfield* (1980) 100 Cal.App.3d 858 [161 Cal.Rptr. 342] [full credit bid did not bar action against attorney and real estate broker for breach of fiduciary duties] with *GN Mortgage Corp.* v. *Fidelity Nat. Title Ins. Co., supra,* 21 Cal.App.4th 1802 [fraud action against escrow company and other third parties precluded by full credit bid].) This issue is before the California Supreme Court in *Alliance Mortgage Co.* v. *Rothwell*▪ (Cal.App.) review granted December 15, 1994 (S043065), briefing limited to whether a lender's acquisition of security property by full credit bid at a nonjudicial foreclosure sale precludes an action against nonborrower third parties for fraud.

value of the security. [Citations.] A foreclosure sale establishes the actual value of the security. [Citation.] Where the secured property is sold at auction for an amount sufficient to satisfy the indebtedness, there is no impairment of security and the secured party is not damaged. [Citation.]" (21 Cal.App.4th at p. 1808.)

On the other hand, the courts have also held that the full credit bid did not preclude an action against a developer for negligent construction (*Sumitomo Bank* v. *Taurus Developers, Inc.*, *supra*, 185 Cal.App.3d at p. 225) or an action against the lender's attorney and real estate broker for negligent breach of fiduciary duties (*Brown* v. *Critchfield*, *supra*, 100 Cal.App.3d at pp. 870-871). The court in *Brown* v. *Critchfield* distinguished the plaintiff's claims for impairment of security from his claims for malpractice. As to the former, the court held the claims were extinguished by the plaintiff's full credit bid, but as to the latter the court permitted recovery. The court explained that as to the latter claims the plaintiff was not seeking to recover the benefit of his bargain in the loan transaction; he was seeking to recover the benefit of his bargain with his attorney and real estate broker, namely fulfillment of the duties of competent advice, good faith and full disclosure.

In the present case, plaintiff has sued under various theories and seeks five principal items of damage. We must evaluate whether those damages are barred by the full credit bid rule.

1. *The $18,470 Loan.* ■ Plaintiff's main item of damage is alleged to be $18,470, which is the amount of the 90-day loan secured by the third deed of trust. Plaintiff seeks to recover this item of damage under each of her theories. In her first and fourth causes of action, plaintiff alleges fraud by defendant Stewart, the escrow agent, in that she was led to believe from the closing documents and from verbal assurances by Stewart employees that she would receive $100,783 from the sale of her home, when in fact she received less. In her second cause of action, plaintiff alleges conversion of the $18,470, as the difference between what plaintiff expected to receive and what she did receive. And in her third cause of action, plaintiff contends that Stewart failed to follow the escrow instructions by failing to give her the full amount of the proceeds from the sale of her home.

The full credit bid rule applies here. Plaintiff is seeking to recover the benefit of her bargain in the loan transaction. It is undisputed that plaintiff received a promissory note for $18,470. Although the note was not mentioned in plaintiff's (seller's) escrow instructions, it was reflected in the buyers' escrow instructions. Plaintiff signed as "read and approved" a copy of that promissory note, and plaintiff herself recorded the third deed of trust securing that note.

It is also undisputed that the $18,470 debt was satisfied by the foreclosure sale. Pursuant to the rationale of the full credit bid rule, once plaintiff purchased the property by entering a full credit bid, she obtained an asset which the law presumes to be valued at the amount of the debt plus expenses. As a matter of law, plaintiff cannot establish any loss of the $18,470; hence, she cannot recover this item of damage.[7] (See *Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at p. 606; *GN Mortgage Corp.* v. *Fidelity Nat. Title Ins. Co., supra,* 21 Cal.App.4th 1802, 1808-1809; *Western Fed. Savings & Loan Assn.* v. *Sawyer, supra,* 10 Cal.App.4th 1615, 1622-1623; *Commonwealth Mortgage Assurance Co.* v. *Superior Court, supra,* 211 Cal.App.3d 508, 518-521; *Sumitomo Bank* v. *Taurus Developers, Inc., supra,* 185 Cal.App.3d 211, 220.)

2. *The $12,300 Note.* Plaintiff alleges that she instituted the nonjudicial foreclosure and made her full credit bid simply to mitigate her damages and protect her security interests; that as a result of the foreclosure on the third deed of trust she also lost $12,300, which is the amount of the loan secured by the second deed of trust.[8]

Again, however, plaintiff is seeking to recover the benefit of her bargain in the loan transaction, and this item of damage is barred by the full credit bid rule. Plaintiff's full credit bid conclusively established the value of the property as being equal to the indebtedness secured by the property. (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at p. 606.) Within the context of foreclosure of a junior lien, plaintiff's full credit bid is presumed to establish the value of the total indebtedness, since plaintiff took the property subject to the first and second deeds of trust. Had plaintiff believed the value of the property was insufficient to support both senior liens, plaintiff was not obligated to make a full credit bid. (See fn. 2, *ante.*) Had plaintiff entered a bid for $12,300 less than the amount owing to her on the $18,470 note, then plaintiff would not be precluded from recovering the $12,300 remaining due. (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at p. 607 [in action for bad faith waste, lender could recover difference between unpaid balance on the debt and amount of credit bid]; *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 140 [135 Cal.Rptr. 802] [in

[7]Plaintiff also alleges that she suffered additional interest expenses on her loan to purchase the Valley Springs property because the $18,470 was not applied to that property. This item of damage is too speculative to be recoverable. Plaintiff received over $23,000 in cash out of escrow and could have applied that sum to her new loan. There is no showing that had she received an additional $18,470 she would have applied it to the Valley Springs loan.

[8]When plaintiff acquired the property at the trustee's sale, she took the property subject to the senior liens. Because plaintiff was herself the lienholder on the second deed of trust, that lien was merged with her title and thereby extinguished. (See *Union Bank* v. *Wendland* (1976) 54 Cal.App.3d 393, 406 [126 Cal.Rptr. 549].)

fraud action, lender could recover deficiency remaining after lender repurchased property at nonjudicial foreclosure sale].) By her full credit bid, however, plaintiff accepted the property as being equal to the indebtedness.

3. *Real Estate Commission.* ■ Plaintiff contends that Stewart ought not to have paid a real estate commission to an unlicensed broker on a fictitious sale, and plaintiff alleges that she lost the real estate commission paid to Rabb ($7,380). In her fourth cause of action for fraud, plaintiff alleges that Rabb created a fictitious sale with false documents and fictitious buyers and that Rabb was aided by Stewart in consummating a fictitious escrow. In her third cause of action for breach of fiduciary duties of an escrow agent, plaintiff contends Stewart failed to protect her from Rabb's fraudulent scheme by failing to disclose that Rabb was unlicensed and had a history of fraudulent real estate deals.[9]

There is authority to support Stewart's argument that plaintiff's damages are barred by her full credit bid. In *GN Mortgage Corp.* v. *Fidelity Nat. Title Ins. Co.*, *supra*, 21 Cal.App.4th 1802, the plaintiff alleged that the defendants (an escrow company and others) had conspired fraudulently to induce plaintiff to finance a fictitious sale of property at an inflated price. The appellate court affirmed the trial court's ruling that the plaintiff's full credit bid at a nonjudicial foreclosure sale extinguished all the plaintiff's claims. The court reasoned as follows: "Defrauding parties should certainly be held accountable for the damages caused by their misconduct. However, because a foreclosure sale is designed to establish the value of the property sold, plaintiff's full credit bid set the value of the property at an amount sufficient to satisfy the indebtedness and all accrued expenses. Therefore, defendants' tortious conduct did not cause any damage. Any losses suffered thereafter resulted either from a severe market downturn or from defendants' [*sic* plaintiff's] exercise of business judgment." (21 Cal.App.4th at p. 1809.)

---

[9]The sole issue presented for our review is whether plaintiff's damages are foreclosed by her full credit bid. Stewart argued below that it owed no duty to protect plaintiff from Rabb's fraud. Plaintiff countered with the often-stated principle that an escrow holder is a fiduciary to the parties to the escrow. (*Kirby* v. *Palos Verdes Escrow Co.* (1986) 183 Cal.App.3d 57, 64-65 [227 Cal.Rptr. 785]; see also *Axley* v. *Transamerica Title Ins. Co.* (1978) 88 Cal.App.3d 1, 8 [151 Cal.Rptr. 570].) Yet, despite the general description of an escrow holder as a fiduciary, the obligations of an escrow agent are limited to faithful compliance with the instructions from the principals. (*Schaefer* v. *Manufacturers Bank* (1980) 104 Cal.App.3d 70, 77-78 [163 Cal.Rptr. 402].) For example, in *Lee* v. *Title Ins. & Trust Co.* (1968) 264 Cal.App.2d 160 [70 Cal.Rptr. 378], the court held that absent any allegations of collusion or involvement by the escrow agent, the escrow agent had no obligation to inform the buyers of suspicious facts that might indicate they were being defrauded by the sellers. In the present case, however, plaintiff has alleged that Stewart was involved in assisting Rabb with his fraudulent scheme. We will assume, therefore, that plaintiff could establish a breach of duty by Stewart.

As noted earlier in our discussion, the court in *GN Mortgage* explained that *"The primary measure of damages for tortious acts against a secured lender is the extent of impairment of the security,* i.e., the amount by which the indebtedness exceeds the actual value of the security. [Citations.] A foreclosure sale establishes the actual value of the security. [Citation.] Where the secured property is sold at auction for an amount sufficient to satisfy the indebtedness, there is no impairment of security and the secured party is not damaged. [Citation.]" (*GN Mortgage Corp.* v. *Fidelity Nat. Title Ins. Co., supra,* 21 Cal.App.4th at p. 1808, italics added.)

The flaw in this analysis is that the measure of damages for tortious conduct, whether fraud or negligence, is *not* limited to the extent to which the lender's security interest has been impaired. (See *Foggy* v. *Ralph F. Clark & Associates, Inc.* (1987) 192 Cal.App.3d 1204, 1214 [238 Cal.Rptr. 130] [action against appraiser for negligence or fraud]; *Sumitomo Bank* v. *Taurus Developers, Inc., supra,* 185 Cal.App.3d 211, 225 [action against developer-borrower for negligent construction].)[10] Damages that may be recovered in a fraud or negligence action are considerably broader than those recoverable for impairment of security. A tort victim is not limited to his or her "out-of-pocket" losses; rather, he or she is entitled to compensatory damages for any actual loss, as well as punitive damages for fraud (if the fraud consisted of an intentional misrepresentation or concealment). (Civ. Code, § 3333; *Foggy* v. *Ralph F. Clark & Associates, Inc., supra,* 192 Cal.App.3d 1204, 1214; see *Brown* v. *Critchfield, supra,* 100 Cal.App.3d at p. 871.)

In the present case, plaintiff's alleged loss of the real estate commission as a result of fraud and negligence by the escrow agent is an actual loss beyond the unpaid loans.[11] This item of damage is unrelated to any impairment of her security and, hence, is not barred by the full credit bid rule.

4. *Punitive Damages.* For the same reasons discussed above, plaintiff is not precluded by her full credit bid from seeking recovery of punitive damages (if she succeeds in proving intentional fraud or concealment). Punitive damages obviously go beyond the impairment of security. (*Foggy* v. *Ralph F. Clark & Associates, Inc., supra,* 192 Cal.App.3d at p. 1214.)

---

[10]Whether the analysis in *GN Mortgage* is flawed will be decided by the Supreme Court in *Alliance Mortgage Co.* v. *Rothwell* (S043065, review granted December 15, 1994). (See fn. 6, *ante.*)

[11]Plaintiff also alleges the loss of her expenses for moving to her new home in Valley Springs. This item of damage is not recoverable, as there is no causal connection between Stewart's alleged misconduct and plaintiff's move to her new home. It is undisputed that plaintiff obtained a loan for the purchase of the Valley Springs property and $61,100 of her proceeds from the sale of the Daly City house were applied to the Valley Springs purchase.

5. *Emotional Distress.* Plaintiff alleges that she suffered emotional distress from the worry about the Dewses' nonpayment of the loans. Because plaintiff is precluded from recovering any financial injury in the loan transactions, there is no basis for recovery of emotional distress related to those loan transactions. Plaintiff has not alleged any causal connection between her emotional distress and the loss of the real estate commission, the only item of damage unrelated to the nonpayment of the debts.

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is reversed and the matter is remanded for further proceedings limited to plaintiff's entitlement to recover the real estate commission and punitive damages. In all other respects, the judgment is affirmed. The order for sanctions against plaintiff's counsel is reversed. Each party shall bear his or her own costs.

Newsom, Acting P. J., and Stein, J., concurred.

---

*See footnote, *ante,* page 1609.