[No. B060505. Second Dist., Div. Seven. Nov. 18, 1992.]

WESTERN FEDERAL SAVINGS & LOAN ASSOCIATION, Plaintiff and Respondent, v.
SANDRA SAWYER, Defendant and Appellant.

**COUNSEL**

John Guerin and Lewis James Runchey for Defendant and Appellant.

Peter J. Sullivan and Dennis Larson for Plaintiff and Respondent.

**OPINION**

**JOHNSON, J.**—Defendant, Sandra Sawyer, appeals from a judgment entered after a jury trial in favor of plaintiff and respondent, Western Federal

Savings & Loan Association. The jury found Sawyer was part of a civil conspiracy to fraudulently induce Western Federal to make a residential loan and gave judgment for the bank. Because we find the trial court erroneously applied the law concerning the legal effect of a full credit bid by the secured lender at a nonjudicial foreclosure sale, we reverse the judgment.

## FACTS AND PROCEEDINGS BELOW

Defendant and appellant, Sandra Sawyer, is an attorney who is very involved in real estate transactions. At the time of trial she had made between 20 to 50 real estate purchases.

On February 1, 1983, Sawyer purchased a parcel of residential property located at 2315 Moss Avenue, Los Angeles.

In May 1983, Sawyer opened an escrow to sell the property to Mrs. and Mr. Steven R. Smith (Smith). According to escrow instructions and loan documents, Smith was to pay $115,000 for the property and make a cash down payment of $23,000. The loan application indicated Smith intended to occupy the property. Sawyer represented, and a presale appraisal indicated, the property was a duplex.

Smith's loan application was referred to Western Federal Savings & Loan Association (Western Federal or bank) through a mortgage broker. The bank reviewed the presale appraisal report and agreed to fund the loan request for $92,000.

The Sawyer/Smith escrow closed on September 1, 1983. Thirty days prior to this date, Sawyer gave a notice to quit to the one tenant who occupied the larger unit. According to Sawyer, Smith later notified her he was having marital problems and would not be moving into the residence. Smith, on the other hand, claimed because he never read the loan application documents or escrow instructions, he never knew he was supposed to reside at the property. In any event, the tenants remained on the property and continued to pay rent. Sawyer apparently collected these rents until sometime in spring 1984.

The loan went into default after three payments were made on the $92,000 loan. On November 1, 1983, Smith sold their interests in the property.

A trustee's sale of the Moss Avenue property was held in 1985 after numerous delays occasioned by the bankruptcy of one of Smith's successors in interest. The bank acquired the property in this nonjudicial foreclosure sale after making a full credit bid consisting of the unpaid principal and interest of the mortgage, costs, fees and other foreclosure expenses.

Thereafter, the bank incurred additional expenses to maintain and renovate the residence in order to resell it on the open market. In conducting a postforeclosure sale appraisal of the property, the bank discovered the residence was not a bona fide duplex but one large living unit and a smaller unit consisting of a bedroom/living room and a bathroom. By this time the bank was aware Smith never occupied the property and may not have made the cash down payment of $23,000 as the escrow and loan agreements required. The bank eventually sold the property in 1986 for $96,500.

In September 1986 Western Federal brought suit against Smith, Sawyer and others based on the alleged misrepresentations in Smith's loan application and the property appraisal report. Although the trial court dismissed or gave a directed verdict in favor of Sawyer on the causes of action for unjust enrichment, declaratory relief, conversion and constructive trust on the loan proceeds, the court denied Sawyer's motions for summary judgment or directed verdict on the fraud and misrepresentation causes of action.

Trial was to a jury which found Sawyer was part of a conspiracy to fraudulently induce the bank to make the loan to Smith.[1] The trial court denied Sawyer's motions for new trial and for judgment notwithstanding the verdict and this appeal followed.

### DISCUSSION

*The bank's causes of action for fraud and misrepresentation were destroyed by its full credit bid at the nonjudicial foreclosure sale which conclusively established its security was not impaired and it was therefore not damaged by the alleged misrepresentations in procuring the loan.*

First, it is important to note what this case is not about. Both sides agree the antideficiency statutes do not directly apply to the present action. (Code Civ. Proc., §§ 726, 580a, 580b, 580d; *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 138-139 [135 Cal.Rptr. 802].) Second, both sides agree the antideficiency statutes do not preclude a separate action for fraud committed in a loan application transaction. (Fin. Code, §§ 779, 7459, 7460, 15102.) Where the litigants part company, however, is over the effect of a full credit bid by the secured lender at a nonjudicial foreclosure sale of the property securing the loan in default.

Sawyer contends Western Federal's full credit bid at the nonjudicial foreclosure sale conclusively established its security for the debt obligation

---

[1] The Bank's suit against Smith settled prior to trial.

was not impaired, and consequently, as a matter of law, it was not damaged by any alleged misrepresentations in the loan transaction. Sawyer further contends because the bank could not establish it suffered any damage from the misrepresentations, the bank failed to state a cause of action for either fraud or misrepresentation and these causes of action should have been dismissed. We agree.[2]

In *Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590 [125 Cal.Rptr. 557 [542 P.2d 981] one of the issues presented for resolution was whether antideficiency judgment legislation precluded separate actions for waste. After analyzing the relationship between actions for waste and the antideficiency judgment statutes, the Supreme Court held actions for waste could not be maintained if the waste occurred as a result of a downturn in economic conditions. On the other hand, the court held a lender should not go remediless if the waste was due to reckless, intentional or malicious acts as these acts did not involve the type of risk intended to be borne by a lender in promoting the objective of the antideficiency legislation.

In applying its holding to the particular facts in that case, the court stated: "While our foregoing conclusion may expose defendant to liability on the basis of having committed 'bad faith' waste, the question need not be resolved. *We have further concluded that even assuming that defendant is liable on such basis, nevertheless plaintiff cannot recover since she purchased the subject property at the trustee's sale by making a full credit bid.* As stated previously, the measure of damages for waste is the amount of the impairment of the security, that is the amount by which the value of the security is less than the outstanding indebtedness and is thereby rendered inadequate. [Citation.] The point of defendant's argument is that the mortgagee's purchase of the property securing the debt by entering a full credit bid establishes the value of the security as being equal to the outstanding indebtedness and ipso facto the nonexistence of any impairment of the security. As applied to the factual context of the instant case, the argument is that the purchase by plaintiff-vendor-beneficiary of the property covered by the purchase money deed of trust pursuant to a full credit bid made and accepted at the nonjudicial foreclosure sale resulted in a total satisfaction of the secured obligation. We agree.

 "Where an indebtedness secured by a deed of trust covering real property has been satisfied by the trustee's sale of the property on foreclosure for the full amount of the underlying obligation owing to the beneficiary, the lien on the real property is extinguished. [Citations.] In such event,

---

[2]Because we reverse on this point, we need not address the remaining issues raised in this appeal.

the creditor cannot subsequently recover insurance proceeds payable for damage to the property [citations], net rent proceeds [citation], or damages for waste [citation]. '[T]he purpose of the trustee's sale is to resolve the question of value and the question of potential forfeiture through competitive bidding. . . .' [Citation.] In *Smith* v. *Allen* (1968) 68 Cal.2d 93, 95-96 [436 P.2d 65], this court held that a nonjudicial foreclosure sale, if regularly held, finally fixes the value of the property therein sold.

"At the nonjudicial foreclosure sale, the beneficiary is entitled to make a credit bid up to the amount of his indebtedness, since it would be useless to require him to tender cash which would only be immediately returned to him. [Citation.] However, the mortgagee is not required to open the bidding with a full credit bid, but may bid whatever amount he thinks the property worth. Indeed 'many creditors continually enter low credit bids . . . to provide access to additional security or additional funds.' [Citation.] It has been said that this is what the creditor should do: ' "Of course, the situation would have been different if the loss-payable mortgagee, Rosenbaum had bid less for the property as was her right. In such case, a deficiency balance of the debt would have remained for which she would have had an entitlement out of the insurance policy. The extinguishment of the mortgage or deed of trust by the foreclosure would not have affected her right to be paid the remainder of the debt under the policy. [¶] However, this was not done. Presumably, Rosenbaum bid what she thought the security property to be worth in its condition at the time of her bid. To bid more than the property was then actually worth was not required of her, nor would such a bid be sensible." ' [Citation.]

"Exactly the same situation obtains with respect to an action for waste. If the beneficiary or mortgagee at the foreclosure sale enters a bid for the full amount of the obligation owing to him together with the costs and fees due in connection with the sale, he cannot recover damages for waste, since he cannot establish any impairment of security, the lien of the deed of trust or mortgage having been theretofore extinguished by his full credit bid and all his security interest in the property thereby nullified. If, however, he bids less than the full amount of the obligation and thereby acquires the property valued at less than the full amount, his security has been impaired and he may recover damages for waste *in an amount not exceeding the difference between the amount of his bid and the full amount of the outstanding indebtedness immediately prior to the foreclosure sale.*" (*Cornelison* v. *Kornbluth, supra*, 15 Cal.3d at pp. 606-607, fn. omitted, italics added.)

The analysis in *Cornelison* concerning full credit bids has been consistently applied in various contexts to determine whether a lender's security has been impaired and therefore whether the lender has been damaged. Thus, contrary to the representations made to the trial court by the bank, the full

credit bid rule applies whether the loan is for commercial or residential property, or whether the loan is for construction or is a purchase money loan. (See, e.g., 4 Miller & Starr, Cal. Real Estate (2d ed. 1989) Deeds of Trust and Mortgages, §§ 9:157-9:158, pp. 533-546 and cases cited; 3 Witkin, Summary of Cal. Law (9th ed. 1987) Security Transactions in Real Property, § 162, p. 661; *id.* (1992 supp.) § 162, p. 119 and cases cited.) This is true whether damages are sought from the borrower, seller or any of their respective successors or predecessors in interest or other third parties. (See, e.g., *Cornelison* v. *Kornbluth, supra,* 15 Cal.3d 590 [action against borrower's successor]; *Brown* v. *Critchfield* (1980) 100 Cal.App.3d 858 [161 Cal.Rptr. 342] [action for fraud causing alleged impairment of security against real estate broker and attorney retained to assist lender in transactions precluded by full credit bid, but action for breach of fiduciary duty proper]; *Commonwealth Mortgage Assurance Company* v. *Superior Court* (1989) 211 Cal.App.3d 508 [259 Cal.Rptr. 425] [action by borrower's insurer against borrowers].)

On the other hand, separate suits for fraud may be maintained when the fraud induced the making of the loan which in turn resulted in a deficiency after a nonjudicial foreclosure sale, i.e., an impairment of the security securing the loan. (*Glendale Fed. Sav. Loan Assn.* v. *Marina View Heights Dev. Co., supra,* 66 Cal.App.3d 101 [suit for fraud against corporate borrower and its principals allowed due to deficiency after nonjudicial foreclosure sale]; *Lassar & Gross International, Inc.* v. *Dunham* (1987) 196 Cal.App.3d 496 [241 Cal.Rptr. 854] [suit for fraud against borrower and all others allegedly involved in conspiracy allowed due to deficiency after nonjudicial foreclosure sale]; contra, *First Fed. Sav. & Loan Assn.* v. *Lehman* (1984) 159 Cal.App.3d 537 [205 Cal.Rptr. 600] [despite deficiency, lender prevented from seeking damages for fraud in the inducement of the loan for failure to demonstrate causal connection to reduced value of security; decision overruled by amendments to antideficiency statutes in 1985]; cf. *Sumitomo Bank* v. *Taurus Developers, Inc.* (1986) 185 Cal.App.3d 211, 217 [229 Cal.Rptr. 719] [full credit bid by lender at foreclosure sale conclusively established no impairment of security and no justifiable reliance on misrepresentation in loan transaction, therefore no cause of action for fraud as a matter of law]; *Commonwealth Mortgage Assurance Co.* v. *Superior Court, supra,* 211 Cal.App.3d 508, 518 [missing elements of damage and justifiable reliance on misrepresentations in loan documents fatal to fraud cause of action after full credit bid by lender at foreclosure sale].)

The only decision arguably inconsistent with the general rules, and the decision relied on by Western Federal, is *Guild Mortgage Co.* v. *Heller* (1987) 193 Cal.App.3d 1505 [239 Cal.Rptr. 59]. In that case the court upheld an action for fraud in the inducement of a loan even though the purported

misrepresentations did not directly relate to the value of the secured property. There, Guild Mortgage sold the note to the Federal Home Loan Mortgage Corporation (FHLMC) which foreclosed and purchased the property at a nonjudicial sale apparently by making a full credit bid. Guild Mortgage was compelled under federal regulations to repurchase the property, and in reselling the property on the open market, suffered an alleged loss of $50,000. (193 Cal.App.3d at p. 1509.)

The *Guild Mortgage* court concluded: "Regardless of whether the FHLMC purchased the property by making a full credit bid, the complaint avers that plaintiff Guild Mortgage and not the FHLMC was damaged in an amount exceeding $50,000 when it was required to repurchase and sell the property on the open market. The complaint further alleges that the repurchase was necessitated by defendants' fraud and that the loan would not have been made in the absence of the purported misrepresentations. Even under the rule articulated in *Lehman*, these allegations are sufficient to establish a clear causal connection between defendants' alleged fraudulent conduct and the damages sustained." (193 Cal.App.3d at p. 1514.)

This decision is factually unique and distinguishable on that basis. Guild Mortgage became an involuntary owner of the foreclosed property. Federal regulations forced Guild Mortgage to reacquire the property from the FHLMC at the FHLMC's cost. (193 Cal.App.3d at p. 1509, fn. 3.) Because Guild Mortgage was not the purchaser at the nonjudicial foreclosure sale, it had no control over the price ultimately bid. Had it bid a lesser sum closer to the property's actual value, such bid would have been rejected by virtue of FHLMC's higher full credit bid. Therefore, the full credit bid by the FHLMC could not be deemed an admission of the property's actual value nor work an estoppel against Guild Mortgage in that case. (4 Miller & Starr, Cal. Real Estate, *supra*, Deeds of Trusts & Mortgages, § 9:158, p. 546.) These unique facts make the decision in *Guild Mortgage* arguably sui generis, and in any event, inapplicable to this case where Western Federal consciously and voluntarily chose to make a full credit bid at the nonjudicial foreclosure sale although it was not required to do so.[3]

In the case at bar, the Bank alleged it was damaged by Sawyer's and Smith's tortious activities during the lending transaction. However, because Western Federal acquired the property at the nonjudicial foreclosure

---

[3] Also distinguishable are those cases allowing actions for rescission despite a full credit bid where the lender/beneficiary could not discover the lower value of the property due to the trustor's fraud or because the condition of the property could not be discovered upon reasonable inspection. (See, e.g., *Kass* v. *Weber* (1968) 261 Cal.App.2d 417, 421 [67 Cal.Rptr. 876]; see also *Karoutas* v. *HomeFed Bank* (1991) 232 Cal.App.3d 767, 774-775 [283 Cal.Rptr. 809].)

sale by choosing to make a full credit bid, its lien was extinguished (Civ. Code, § 2910). As a result, the bank's security for the debt obligation was not impaired and it suffered no damage. Because it could not prove any damage from the alleged misrepresentations, Western Federal had no viable cause of action for fraud or misrepresentation in the loan transaction and these causes of action should have been dismissed.[4]

We therefore reverse the judgment with directions to the trial court to enter judgment in favor of appellant Sawyer. (Code Civ. Proc., §§ 906, 629; *Noblit* v. *Blickshire Hotels & Motels, Inc.* (1949) 93 Cal.App.2d 864, 866 [210 P.2d 43].)

### DISPOSITION

The judgment is reversed. The trial court is directed to vacate the prior judgment and enter a new and different judgment in favor of appellant Sandra Sawyer and against Western Federal. Appellant is to recover her costs of appeal.

Lillie, P. J., and Woods (Fred), J., concurred.

Respondent's petition for review by the Supreme Court was denied March 2, 1993. Lucas, C. J., Panelli, J., and Baxter, J., were of the opinion that the petition should be granted.

---

[4]According to one commentator, "It is astounding that beneficiaries still enter full credit bids without consideration of their effect. The full credit bid rule is so clearly established that it would be apparent malpractice for an attorney who conducts a foreclosure sale . . . to fail to advise a client of its effect prior to the sale." (4 Miller & Starr, Cal. Real Estate, *supra*, Deeds of Trust and Mortgages, § 9:158, pp. Supp. 44-45.)