[No. G016526. Fourth Dist., Div. Three. Dec. 21, 1995.]

PACIFIC INLAND BANK, Plaintiff and Appellant, v.
CHARLES AINSWORTH et al., Defendants and Respondents.

COUNSEL

Steven C. Smith and Jeffrey S. Sinek for Plaintiff and Appellant.

Callahan, McCune & Willis, Robert W. Thompson and Elizabeth L. Kolar for Defendants and Respondents.

OPINION

**SONENSHINE, Acting P. J.**—Pacific Inland Bank (PIB) appeals from a judgment granting Charles Ainsworth and Ainsworth Appraisal Services' (Ainsworth) motion for summary judgment and dismissal of its complaint. The court concluded the full credit bid rule barred PIB from maintaining a negligence action against Ainsworth, a third party nonborrower. We agree and affirm.

I

Santiago Investors, wishing to develop two vacant parcels, approached PIB for a $300,000 loan. PIB retained Ainsworth to appraise the properties and determine, inter alia, whether applicable zoning restrictions permitted the proposed construction of a shopping center on one parcel and a gas station on the other.

The appraisals indicated the properties were zoned for commercial use and valued the shopping center site at $1.5 million and the gas station site at $225,000. Based on this information, PIB loaned Santiago $300,000 secured by a first deed of trust.

All did not proceed as planned. Contrary to Ainsworth's appraisals, the properties were not zoned for commercial use. Santiago defaulted on the loan and PIB foreclosed on the lien, eventually acquiring both parcels at a nonjudicial foreclosure sale after tendering a full credit bid of $335,615.82.

PIB's attempts to resell the properties were unsuccessful; the highest offer it received for both parcels was $185,000. PIB filed the underlying suit alleging Ainsworth's breach of contract and its negligence in preparing the appraisals resulted in the loan being undersecured. The trial court granted Ainsworth's motion for summary judgment, concluding PIB's full credit bid established as a matter of law it had not suffered any damages.

## II

Two appellate courts recently addressed a similar issue. In *GN Mortgage Corp.* v. *Fidelity Nat. Title Ins. Co.* (1994) 21 Cal.App.4th 1802 [27 Cal.Rptr.2d 47] and *Western Fed. Savings & Loan Assn.* v. *Sawyer* (1992) 10 Cal.App.4th 1615 [13 Cal.Rptr.2d 639], the courts concluded a full credit bid lender cannot establish damages resulting from a defendant's alleged fraud in seeking a loan because the credit bid conclusively establishes lack of impairment to the security.[1] However, in *Alliance Mortgage Co.* v. *Rothwell*, *supra*, 10 Cal.4th 1226, our Supreme Court held otherwise. Lenders' "full credit bids do not as a matter of law bar [their] fraud claims . . . ." (*Id.* at p. 1251.) In this appeal, we consider whether the Supreme Court intended that a full credit bid should bar other tort actions. For reasons we now explain, we conclude *Alliance* is limited to fraud claims and does bar the causes of action stated here.

## III

### FULL CREDIT BID

When a debtor defaults on a secured real property loan, the lender-beneficiary may institute nonjudicial foreclosure proceedings triggering a trustee's sale of the property to satisfy the obligation. (Civ. Code, § 2924 et seq.) The beneficiary, like any other party, may bid cash for the property, offering more or less than the balance on the debt. However, unlike other buyers, a lender-purchaser may credit bid all or any portion of the outstanding debt because it would be useless to require the lender to tender cash to

---

[1]We also note *Romo* v. *Stewart Title of California* (1995) 35 Cal.App.4th 1609 [42 Cal.Rptr.2d 414], which was decided in June 1995. The remittitur was issued on August 24, 1995. Romo holds, inter alia, a full credit bid precludes a lender's subsequent action against a third party nonborrower for fraud. (*Id.* at p. 1616.) *Alliance Mortgage Co.* v. *Rothwell* (1995) 10 Cal.4th 1226 [44 Cal.Rptr.2d 352, 900 P.2d 601], which was decided on August 28, does not overrule or cite *Romo*.

itself. (*Central Sav. Bank of Oakland* v. *Lake* (1927) 201 Cal. 438, 447-448 [257 P. 521].) Once made, there is no distinction between lender-purchasers' credit bids and other buyers' cash bids. (Civ. Code, § 2924h, subd. (b).)

A cash or credit bid extinguishes the debt owing on the property by the amount bid. Therefore, when a lender acquires the property either by cash or on a credit bid, for the full amount due by terms of the note and deed of trust, it is no longer the creditor or mortgagor of the borrower because there is no longer any debt to be enforced. As explained by our Supreme Court almost 100 years ago, "whatever interest [it] had[,] . . . ceased with the extinguishment of the indebtedness." (*Reynolds* v. *London etc. Ins. Co.* (1900) 128 Cal. 16, 22 [60 P. 467].)

"Real property, as security, affords a mortgagee . . . primary, and in many cases . . . sole, means of repayment of a debt should the mortgagor default. Generally speaking, impairment of security is that circumstance where the mortgaged property's value no longer assures satisfaction of the debt. . . . [Therefore, a full credit bid lender] is precluded from recovering for this impairment of security because it has been established, by [the] full credit bid, that [the] security was sufficient to satisfy the debt." (*Brown* v. *Critchfield* (1980) 100 Cal.App.3d 858, 869 [161 Cal.Rptr. 342].)

Like any other purchaser, a lender has no obligation to bid any particular amount. It should assess the property's value at the time of the trustee's sale and bid accordingly. (*Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590, 608 [125 Cal.Rptr. 557, 542 P.2d 981]; *Sumitomo Bank* v. *Taurus Developers, Inc* (1986) 185 Cal.App.3d 211, 225 [229 Cal.Rptr. 719].) Any subsequent decrease in the property is deemed the result of the purchaser's bad business judgment or a severe market downturn. (*GN Mortgage Corp.* v. *Fidelity Nat. Title Ins. Co.*, *supra*, 21 Cal.App.4th 1802, 1809.) "[A]fter full credit bid, [a] lender cannot pursue any other remedy regardless of [the] actual value of the property on the date of sale[.]" (*Alliance Mortgage Co.* v. *Rothwell*, *supra*, 10 Cal.4th 1226, 1238.)

## THE SUPREME COURT AND THE FULL CREDIT BID

Our Supreme Court discussed the effect of a lender's full credit bid in a nonjudicial foreclosure sale in *Cornelison* v. *Kornbluth*, *supra*, 15 Cal.3d 590. There, the plaintiff sold a single-family dwelling, taking back a promissory note secured by a first deed of trust on the property. (*Id.* at p. 594.) After the property was condemned as unfit for human habitation and the purchasers defaulted on the note, the plaintiff purchased the property at the trustee's sale by making a full credit bid. (*Id.* at pp. 594, 606.) Plaintiff then sued a third party nonborrower for waste. (*Id.* at p. 594.)

The Supreme Court recognized a lender's claim for bad faith was not precluded by the antideficiency statutes. However, it "further concluded that even assuming that defendant is liable on such basis, nevertheless plaintiff cannot recover since she purchased the subject property at the trustee's sale by making a full credit bid[] . . . [because] the measure of damages for waste is the amount of the impairment of the security, that is the amount by which the value of the security is less than the outstanding indebtedness and is thereby rendered inadequate. [Citation.] . . . [T]he mortgagee's purchase of the property securing the debt by entering a full credit bid establishes the value of the security as being equal to the outstanding indebtedness and ipso facto the nonexistence of any impairment of the security. . . . [¶] [Therefore,] [w]here an indebtedness secured by a deed of trust covering real property has been satisfied by the trustee's sale of the property on foreclosure for the full amount of the underlying obligation owing to the beneficiary, the lien on the real property is extinguished. [Citations.]" (*Cornelison v. Kornbluth, supra*, 15 Cal.3d 590, 606, fn. omitted.)

The Supreme Court in *Alliance* revisited the full credit bid issue but this time in a slightly different context. The court limited its consideration to whether such a bid "bars the lender [as a matter of law] from maintaining a *fraud* action [against] . . . third part[y nonborrowers] who fraudulently induced the lender to make the loans." (*Alliance Mortgage Co. v. Rothwell, supra*, 10 Cal.4th 1226, 1241, original italics.) The court concluded it did not, rejecting contrary holdings in *GN Mortgage Corp. v. Fidelity Nat. Title Ins. Co., supra*, 21 Cal.App.4th 1802 and *Western Fed. Savings & Loan Assn. v. Sawyer, supra*, 10 Cal.App.4th 1615.

*Alliance* held the full credit bid is not a bar to a fraud cause of action against a third party nonborrower when the lender can establish it was "intentionally and materially misled by its own fiduciaries or agents as to the value of the property prior to even making the loan . . . ." (*Alliance Mortgage Co. v. Rothwell, supra*, 10 Cal.4th 1226, 1246, fn. omitted.) "Thus, to the extent Alliance's full credit bids were proximately caused by defendants' fraudulent misrepresentations, and this reliance without independent or additional inquiry was either appropriate given the context of the relationship or was not otherwise manifestly unreasonable, Alliance's bids cannot be deemed an admission of the properties' value. . . . Hence, the full credit bid rule would not apply." (*Alliance Mortgage Co. v. Rothwell, supra*, 10 Cal.4th at p. 1247.)

### Full Credit Bid Rule Still Bars Nonfraud Claims Against Third Party Nonborrowers

The Supreme Court in *Alliance* made its intentions very clear from the inception of its opinion. "We here determine whether a lender's acquisition

of security property by full credit bid at a nonjudicial foreclosure sale bars the lender as a matter of law from maintaining *a fraud* action against third party nonborrowers who fraudulently induced the lender to make the loans. The Courts of Appeal are in conflict on this issue. We granted review to resolve the conflict, and now conclude that such an action is not precluded." (*Alliance Mortgage Co.* v. *Rothwell, supra,* 10 Cal.4th 1226, 1231, italics added.) The court again expressed that its holding was limited to fraud claims and included third party nonborrowers at the conclusion of the opinion. "We conclude that Alliance's full credit bids do not as a matter of law bar its fraud claims against [these third party nonborrower] defendants." (*Id.* at p. 1251.) Indeed, each of the court's many references to the issue being considered includes that it is a claim of *fraud.* (E.g., "The issue here is the effect of a lender's full credit bid at a nonjudicial foreclosure sale on its claim of fraud . . . ." (*Id.* at p. 1235.).)

■ The *Alliance* court in limiting its holding to fraud-based claims, left *Cornelison* intact. "[T]o the extent [a] full credit bid[] [is] not proximately caused by defendants' fraudulent misrepresentations, . . . the full credit bid rule applies . . . ." (*Alliance Mortgage Co.* v. *Rothwell, supra,* 10 Cal.4th 1226, 1247.) As the court acknowledged, its holding is not a new statement of law. "[T]he antideficiency statutes do not preclude an action against a borrower for fraud in the inducement of a loan." (*Alliance Mortgage Co.* v. *Rothwell, supra,* 10 Cal.4th at p. 1237.) "Nothing in [the full credit bid rule] negates the well-established fraud exception in California to the finality of a foreclosure, or indeed any, property sale." (*Id.* at pp. 1250-1251.) Conversely, absent a fraud claim, a full credit bid estops a plaintiff from establishing damages.

We are unpersuaded by PIB's arguments to the contrary. It maintains because the full credit bid rule and antideficiency legislation result from the same public policy concern, if the former is inapt, so is the latter. PIB misreads applicable legal history. Our Supreme Court recognized the full credit bid rule long before antideficiency legislation was enacted or *Cornelison* was decided. (*Reynolds* v. *London etc. Ins. Co., supra,* 128 Cal. 16, 20-22.) While the rule and the legislation may relate to some of the same public policy concerns, they stand independent of one another. Indeed, the rule, unlike the legislation, is a legal conclusion unmotivated by public policy.

We are sympathetic to PIB's position Ainsworth should not be allowed to escape liability. However, PIB was not precluded from acquiring the property at an amount far less than that owed, thus preserving its rights to seek damages from Ainsworth. Moreover, it could have taken appropriate steps to

ascertain the actual value of the properties before the trustee's sale. As noted in *Alliance*, "The lender, perhaps more than a third party purchaser with fewer resources with which to gain insight into the property's value, generally bears the burden and risk of making an informed bid." (*Alliance Mortgage Co.* v. *Rothwell, supra*, 10 Cal.4th 1226, 1246.) PIB has offered no explanation, nor can we think of any, why it should receive greater protection from its own carelessness than does an ordinary purchaser. This is particularly true in these situations where a lender-purchaser's full credit bid may discourage other cash bidders. PIB controlled the timing of the sale and was in the best position to discover the actual value of the properties. If the property increased in value, PIB would have been entitled to the benefit of its bid. It is reasonable for it to bear the burden. (See 4 Miller & Starr, Cal. Real Estate (2d ed. 1989) § 9:158, pp. 544-545.)[2]

The judgment is affirmed. Respondents shall recover their costs on appeal.

Crosby, J., and Wallin, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 14, 1996.

---

[2]"It is astounding that beneficiaries still enter full credit bids without consideration of their effect. The full credit bid rule is so clearly established that it would be apparent malpractice for an attorney who conducts a foreclosure sale to fail to advise a client of its effect prior to the sale." (4 Miller & Starr, Cal. Real Estate, *supra*, § 9:158, com. (1996 pocket supp.) p. 106.)