[No. B137132. Second Dist., Div. Three. May 31, 2001.]

FIRST COMMERCIAL MORTGAGE COMPANY, Plaintiff and Appellant, v.
DONALD R. REECE et al., Defendants and Respondents.

## COUNSEL

Severson & Werson, Jan T. Chilton and Suzanne M. Hankins for Plaintiff and Appellant.

Chapin Shea McNitt & Carter and Neil Gunny for Defendant and Respondent Donald R. Reece.

Wiezorek, Rice & Dieffenbach, Steven C. Rice; and Herman Thordsen for Defendants and Respondents Andrade Financial and John Andrade.

## OPINION

**KLEIN, P. J.**—Plaintiff and appellant First Commercial Mortgage Company doing business as FCMC Mortgage Company (First Commercial), an Arkansas corporation, appeals a judgment following a grant of summary judgment in favor of defendants and respondents Donald R. Reece (Reece), John Andrade and Andrade Financial, a California corporation (Andrade) (collectively, defendants).

The defendants allegedly fraudulently induced First Commercial to make a loan based on an inflated appraisal and false information. First Commercial sold the loan to First Nationwide Mortgage Company (Nationwide). The borrowers defaulted, Nationwide foreclosed, and made a successful full credit bid at the trustee's sale. Pursuant to their contract, Nationwide then required First Commercial to make it whole. In exchange for repaying Nationwide, First Commercial received the foreclosed property, which it sold at a loss. First Commercial sued defendants to recoup its losses.

The essential issue presented is whether the full credit bid by Nationwide bars First Commercial's causes of action against third party nonborrowers for fraud, negligent misrepresentation and breach of contract.

The rule that a full credit bid operates as an admission by the bidding lender of the property's value does not preclude a claim by the repurchasing lender that it suffered damages from the compelled repurchase as a consequence of the defendant's misrepresentation or breach. Accordingly, the judgment is reversed.

## Factual and Procedural Background

In May 1996, First Commercial made a $207,593 purchase money loan to Juan Lima and Roberto Bracamontes, secured by a deed of trust on real property, namely, a duplex located on North Alma Avenue in Los Angeles. First Commercial alleges it was induced to make the loan, in part, by an appraisal report prepared by Reece wherein he grossly inflated the property's value to $215,000, when in fact the property was worth less than $100,000. Andrade was the loan broker.

First Commercial sold the loan to Nationwide. The borrowers defaulted. On April 15, 1997, Nationwide foreclosed and acquired title to the subject property by making a credit bid of $224,183, the full amount of the unpaid debt. Pursuant to their contract, Nationwide demanded that First Commercial repurchase the loan so as to reimburse Nationwide for its loan loss. First Commercial complied and Nationwide reconveyed the property to First Commercial. First Commercial subsequently sold the property and recovered $79,252. First Commercial claims that as a result of the fraud, it sustained damages in the amount of $148,362.

First Commercial's verified complaint pled causes of action against both Reece and Andrade for fraud and negligent misrepresentation, as well as a cause of action against Andrade for breach of contract.

Defendants answered and thereafter moved for summary judgment. Defendants did not offer any evidence to dispute the allegation in First Commercial's complaint that First Commercial was contractually obligated to

indemnify Nationwide. Defendants simply contended First Commercial's claims were barred as a matter of law by Nationwide's full credit bid. Defendants adopted as an undisputed fact the allegation in First Commercial's complaint that "[First Commercial] made a $207,593 loan based in part upon the presentation of a false and misleading appraisal report." The defense theory on summary judgment rested on the undisputed fact that "[o]n April 15, 1997, the property was acquired with a $224,182.88 credit bid—the same amount as the unpaid debt."

In opposition, First Commercial argued its claims were not barred by the full credit bid at the trustee's sale. First Commercial emphasized the full credit bid was made by Nationwide; First Commercial was compelled to repurchase the property from Nationwide pursuant to their written agreement. Therefore, the notion that First Commercial "should bear the consequences of the actions of its successor in interest at a foreclosure sale, which First Commercial did not control, is contrary to the stated policy of the full credit bid rule, that policy being to make the *bidder* bear the consequences of its' bid."

On July 16, 1999, the matter came on for hearing. The trial court granted summary judgment, ruling "the April 1997 Full Credit Bid at foreclosure satisfied the loan debt herein as a matter of law and that, therefore, plaintiff can prove no recoverable damage."

First Commercial filed a timely notice of appeal from the judgment.

## CONTENTIONS

First Commercial contends the full credit bid rule does not bar its claims for fraud, negligent misrepresentation and breach of contract, in that First Commercial neither conducted, nor bid at, the nonjudicial foreclosure sale.

## DISCUSSION

1. *Standard of review.*

As stated in *PMC, Inc. v. Saban Entertainment, Inc.* (1996) 45 Cal.App.4th 579, 590 [52 Cal.Rptr.2d 877], summary judgment "motions are to expedite litigation and eliminate needless trials. [Citation.] They are granted 'if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citations.]"

A defendant meets its burden upon such a motion by negating an essential element of the plaintiff's case, or by establishing a complete defense, or by

demonstrating the absence of evidence to support the plaintiff's case. Once the moving defendant has met its initial burden, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists. (*PMC, Inc. v. Saban Entertainment, Inc., supra,* 45 Cal.App.4th at p. 590; *Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 482 [50 Cal.Rptr.2d 785].)

■ We review the trial court's ruling on a motion for summary judgment under the independent review standard. (*Rosse v. DeSoto Cab Co.* (1995) 34 Cal.App.4th 1047, 1050 [40 Cal.Rptr.2d 680].)

2. *The full credit bid rule.*

■ "At a nonjudicial foreclosure sale, if the lender chooses to bid, it does so in the capacity of a purchaser. [Citation.] The only distinction between the lender and any other bidder is that the lender is not required to pay cash, but is entitled to make a credit bid up to the amount of the outstanding indebtedness. [Citations.] The purpose of this entitlement is to avoid the inefficiency of requiring the lender to tender cash which would only be immediately returned to it. [Citation.] A 'full credit bid' is a bid 'in an amount equal to the unpaid principal and interest of the mortgage debt, together with the costs, fees and other expenses of the foreclosure.' [Citation.] If the full credit bid is successful, i.e., results in the acquisition of the property, the lender pays the full outstanding balance of the debt and costs of foreclosure to itself and takes title to the security property, releasing the borrower from further obligations under the defaulted note. [Citation.]" (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1238 [44 Cal.Rptr.2d 352, 900 P.2d 601].)[1]

Under the " 'full credit bid rule,' when a lender makes such a bid, it is precluded for purposes of collecting its debt from later claiming that the property was actually worth less than the bid. [Citations.] Thus, the lender is not entitled to insurance proceeds payable for prepurchase damage to the property, prepurchase net rent proceeds, or damages for waste, because the lender's only interest in the property, the repayment of its debt, has been satisfied, and any further payment would result in a double recovery. [Citation.]" (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at pp. 1238-1239.)

In *Cornelison v. Kornbluth* (1975) 15 Cal.3d 590 [125 Cal.Rptr. 557, 542 P.2d 981], the Supreme Court addressed the effect of a full credit bid in a

---

[1]The lender "is not required to open the bidding with a full credit bid, but may bid whatever amount [it] thinks the property worth. [Citation.]" (*Commonwealth Mortgage Assurance Co. v. Superior Court* (1989) 211 Cal.App.3d 508, 520 [259 Cal.Rptr. 425].)

nonjudicial foreclosure sale. In *Cornelison*, the plaintiff sold a single-family dwelling, taking back a promissory note secured by a first deed of trust on the property. (*Id.* at p. 594.) The property was subsequently resold and ultimately condemned as unfit for human habitation. The original purchasers defaulted on the note, and the plaintiff caused the property to be sold at a trustee's sale. (*Ibid.*) She purchased the property at the sale by making a full credit bid. (*Id.* at pp. 594, 606.)

The plaintiff then sued one of the subsequent purchasers, inter alia, for waste. (*Cornelison v. Kornbluth, supra,* 15 Cal.3d at p. 594.) *Cornelison* first concluded that a lender's claim for bad faith waste was not precluded by the antideficiency statutes. (*Id.* at p. 605.) However, *Cornelison* "further concluded that even assuming that defendant is liable on such basis, nevertheless plaintiff cannot recover since she purchased the subject property at the trustee's sale by making a full credit bid." (*Id.* at p. 606, fn. omitted.) *Cornelison* explained, "the measure of damages for waste is the amount of the impairment of the security, that is the amount by which the value of the security is less than the outstanding indebtedness and is thereby rendered inadequate. [Citation.]" (*Ibid.*) "[T]he mortgagee's purchase of the property securing the debt by entering a full credit bid establishes the value of the security as being equal to the outstanding indebtedness and ipso facto the nonexistence of any impairment of the security." (*Ibid.*; accord, *Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at p. 1242.)

### 3. *The Alliance exception: full credit bid rule is inapplicable where the lender was fraudulently induced to make a full credit bid.*

"Treating the full credit bid rule as a 'bright line rule' ultimately led to an undesirable result. Lenders that relied on supposedly valid appraisals in initiating loans and purchasing properties at foreclosure were left without recourse—even in cases involving massive fraud—and the defrauding parties escaped free and clear, at least as far as civil damages were concerned. *GN Mortgage Corp. v. Fidelity Nat. Title Ins. Co.* (1994) 21 Cal.App.4th 1802 [27 Cal.Rptr.2d 47] and *Western Fed. Savings & Loan Assn. v. Sawyer* (1992) 10 Cal.App.4th 1615 [13 Cal.Rptr.2d 639] were two similar cases involving claims of conspiracies to induce the lenders to make loans by allegedly engaging in fraud in connection with loan applications and appraisal reports. In both cases, the plaintiff/lender had obtained the liened property by full credit bid at a nonjudicial foreclosure sale, and in each case, later sold the property at a loss. The appellate courts concluded that, based on the reasoning in *Cornelison*, the defendants could not be liable for damages. (*GN Mortgage Corp. v. Fidelity Nat. Title Ins. Co., supra,* 21 Cal.App.4th at p. 1808[;] . . . *Western Fed. Savings & Loan Assn. v. Sawyer,*

*supra*, 10 Cal.App.4th at p. 1618[).]" *(Michelson v. Camp* (1999) 72 Cal.App.4th 955, 965 [85 Cal.Rptr.2d 539].)

▮ In *Alliance*, "the Supreme Court disapproved the holdings in *GN Mortgage Corp.* and *Western Fed. Savings & Loan Assn.*, and carved out a limited exception to the full credit bid rule." *(Michelson v. Camp, supra*, 72 Cal.App.4th at pp. 965-966.) *Alliance* undertook review "solely on the issue of whether a lender's acquisition of security property by full credit bid at a nonjudicial foreclosure sale bars the lender from maintaining a fraud action to recover damages from nonborrower third parties who fraudulently induced the lender to make the loans." *(Alliance Mortgage Co. v. Rothwell, supra*, 10 Cal.4th at p. 1234.) Specifically, the court considered whether as a result of its full credit bids, the lender "could demonstrate neither justifiable reliance nor actual damages" *(id.*, at p. 1246), both essential elements of fraud. *(Id.* at p. 1239.)

*Alliance* began by discussing reliance: "As with any purchaser at a foreclosure sale, by making a successful full credit bid or bid in any amount, the lender is making a generally irrevocable offer to purchase the property for that amount. [Citation.] The lender, perhaps more than a third party purchaser with fewer resources with which to gain insight into the property's value, generally bears the burden and risk of making an informed bid. [¶] It does not follow, however, that being intentionally and materially misled by its own fiduciaries[2] or agents as to the value of the property prior to even making the loan is within the realm of that risk. [Citation.] Most lenders, such as [plaintiff] in this case, are corporate entities, and rely on their agents to provide them material information. Here, [the lender] did obtain appraisals, and attempted to make informed loan decisions. It alleges, however, that its appraiser . . . in conspiracy with defendants, fraudulently misrepresented the nature of the properties and the existence and qualifications of the buyers, and that it did not discover the fraud until after it acquired title to the properties. The full credit bid rule was not intended to immunize wrongdoers from the consequences of their fraudulent acts." *(Alliance Mortgage Co. v. Rothwell, supra*, 10 Cal.4th at p. 1246, fn. omitted.)

*Alliance* recognized that the lender's difficulty resulted from its overvalued bid at the foreclosure sale. Had it become aware of the true value of the property and bid only what it was worth, there would have been no barrier to a later suit against the defrauding parties. *(Michelson v. Camp, supra*, 72 Cal.App.4th at p. 967.) The *Alliance* court, therefore, held that in order to establish reliance, the lender needed to demonstrate "that its full credit bids

---

[2]*Alliance* did not determine whether the defendants were fiduciaries and left that issue open. *(Alliance Mortgage Co. v. Rothwell, supra*, 10 Cal.4th at p. 1246.)

were a proximate result of defendants' fraud, and that in the absence of such fraud it would not, in all reasonable probability, have made the bids. [Citations.]" (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at pp. 1246-1247.) "[T]o the extent [the lender's] full credit bids were proximately caused by defendants' fraudulent misrepresentations, and this reliance without independent or additional inquiry was either appropriate given the context of the relationship or was not otherwise manifestly unreasonable, [the lender's] bids cannot be deemed an admission of the properties' value. (See *Bank of America etc. Assn.* v. *Reidy* [(1940)] 15 Cal.2d [243,] 248 [101 P.2d 77] ['not unusual for a mortgagee to make a bid for the property in the amount owing on the debt' when it cannot recover a deficiency].) Hence, the full credit bid rule would not apply." (*Alliance, supra,* at p. 1247.)

In other words, "in order to avoid the full credit bid rule, the lender must have been induced to enter into the loan by the false representation, *and* still be under the mistaken belief that the representation was true at the time it makes the full credit bid." (*Michelson v. Camp, supra,* 72 Cal.App.4th at p. 969.) In *Michelson,* "appellants alleged the former—that they were induced to enter into the loan agreement . . . by respondent's intentional or negligent misrepresentations—but not the latter. Their complaint does not contain an allegation that they were induced to make their $652,000 bid on the property in 1994 in reliance on respondent's representations as to the value of the property in 1991 and 1992." (*Ibid.*)

*4. Alliance's further recognition that full credit bid rule is inapplicable where lender justifiably relied on defendant's misrepresentations in selling a loan and thereafter suffered damages from a compelled repurchase of the loan.*

In *Alliance,* "[p]rior to learning of the fraud, [the lender] sold several loan obligations to secondary investors. In the case of three of these properties, regulations of the Federal Home Loan Mortgage Corporation (FHLMC) required [the lender] to repurchase the loans it had earlier sold to the Federal National Mortgage Association (FNMA)." (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at p. 1233.) Thus, with respect to these three properties, the lender alleged "it was compelled by FHLMC regulations to repurchase loans it had earlier sold to secondary investors before it learned of the fraud." (*Id.* at p. 1248.)[3]

---

[3]Technically speaking, one cannot "repurchase" the loan following a foreclosure at which the property is purchased for a full credit bid. Such a bid extinguishes the loan, releasing the borrower from any further obligation under the defaulted note. (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at p. 1238.) The repurchasing lender acquires the property, not the

The Supreme Court held "to the extent [the lender] justifiably relied on defendants' misrepresentations in selling the loans, its damages resulting from any compelled repurchase were incurred as a direct consequence of the fraud. (See *Guild Mortgage* [*Co. v. Heller* (1987)] 193 Cal.App.3d [1505,] 1508-1509 [239 Cal.Rptr. 59]; *id.* at p. 1514 [Allegations that federal regulations compelled repurchase of properties resulting in plaintiff's damage, repurchase necessitated by fraud, and loan would not have been made in the absence of purported misrepresentations 'sufficient to establish a clear causal connection between defendants' alleged fraudulent conduct and the damages sustained.'].) Accordingly, for these claims in particular, we perceive no basis on which such a repurchase, or any full credit bid by the FNMA, would even arguably preclude [the lender] from pursuing a fraud claim against defendants." (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at pp. 1248-1249.)

In *Guild Mortgage Co. v. Heller, supra,* 193 Cal.App.3d 1505, which the Supreme Court cited with approval in *Alliance* (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at p. 1249), a mortgage company allegedly was fraudulently induced by the buyers to extend them a home loan. (*Guild Mortgage Co., supra,* at pp. 1508-1509, 1514.) The mortgage company sold the note to the FHLMC, which foreclosed, purchased the property at a nonjudicial sale, and which then required the mortgage company to repurchase the property. (*Id.* at pp. 1508-1509.) The mortgage company lost over $50,000 in reselling the property on the open market. (*Id.* at p. 1509.) *Guild Mortgage Co.* held the mortgage company had stated a cause of action for fraud in the inducement of the loan. (*Id.* at p. 1514.)

With respect to the consequence of a full credit bid by the secondary purchaser, *Guild Mortgage Co.* stated: "Although the respective briefs devote considerable time to the legal and practical effect of a full credit bid on plaintiff's cause of action, [fn. omitted] we need not resolve that issue on this appeal. Regardless of whether the FHLMC purchased the property by making a full credit bid, the complaint avers that plaintiff Guild Mortgage and not the FHLMC was damaged in an amount exceeding $50,000 when it was required to repurchase and sell the property on the open market. The complaint further alleges that the repurchase was necessitated by defendants' fraud and that the loan would not have been made in the absence of the purported misrepresentations. . . . [T]hese allegations are sufficient to establish a clear causal connection between defendants' alleged fraudulent

loan. Nonetheless, *Alliance* referred to the transaction as a repurchase of the loan (*id.* at pp. 1233, 1248) and we use that terminology here.

conduct and the damages sustained." (*Guild Mortgage Co. v. Heller, supra*, 193 Cal.App.3d at p. 1514.)[4]

    5.  *First Commercial's fraud theory herein is not barred by full credit bid rule.*

    ■  First Commercial properly does not allege it was fraudulently induced to make a full credit bid—the full credit bid was made by Nationwide. Rather, First Commercial alleged it was fraudulently induced to make the loan by way of a misleading appraisal. Thereafter, First Commercial was damaged when it acquired the property as a consequence of its alleged contractual obligation to indemnify Nationwide.

    As explained above, pursuant to *Alliance*, First Commercial's damages resulting from the compelled repurchase were incurred as a direct consequence of the fraud, and neither the repurchase nor the full credit bid by Nationwide precludes First Commercial from pursuing a fraud claim against defendants. (*Alliance Mortgage Co. v. Rothwell, supra*, 10 Cal.4th at pp. 1248-1249.)

    Defendants contend the *Guild Mortgage Co.* and *Alliance* decisions are distinguishable because they involved repurchase obligations imposed by federal regulations. (*Guild Mortgage Co. v. Heller, supra,* 193 Cal.App.3d at p. 1509, fn. 3; *Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at p. 1248.) The argument is unpersuasive. Irrespective of whether the repurchase is compelled by federal regulations or by contract, the critical factor is whether the damages resulting from the compelled repurchase were incurred as a direct result of the fraud. As stated in *Alliance*, to the extent a lender "justifiably relied on defendants' misrepresentations in selling the loans, its damages *resulting from any compelled repurchase* were incurred as a direct consequence of the fraud." (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at pp. 1248-1249, italics added.)

    Defendants also contend First Commercial's decision to *voluntarily* reimburse Nationwide cannot re-create liability that the full credit bid had erased. The argument is meritless. First Commercial's verified complaint alleged it was contractually bound to indemnify Nationwide for any losses resulting from fraudulent loans sold to Nationwide. In seeking summary judgment, defendants did not present any evidence to controvert First Commercial's

---

[4]As explained, a full credit bid is deemed an admission of the property's value. (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at p. 1238.) However, the repurchasing lender does not control the amount the secondary market investor bids at the foreclosure sale. Therefore, the rationale for holding the foreclosing lender to its full credit bid is inapplicable to a lender required to repurchase the property after foreclosure.

claim it was legally obligated to make Nationwide whole. Therefore, respondents' contention that First Commercial acted as a volunteer in reimbursing Nationwide lacks any evidentiary support.[5]

In sum, defendants' reliance on the full credit bid made by Nationwide is misplaced. First Commercial's verified complaint alleged it was fraudulently induced to make the loan, it sold the loan to Nationwide, *it was contractually obligated to indemnify Nationwide for its losses on the loan*, and that in doing so it was damaged by defendants' fraud. A defendant seeking summary judgment has the burden to negate an essential element of the plaintiff's case, or to establish a complete defense, or to demonstrate the absence of evidence to support the plaintiff's case. (*PMC, Inc. v. Saban Entertainment, Inc., supra,* 45 Cal.App.4th at p. 590; *Leslie G. v. Perry & Associates, supra,* 43 Cal.App.4th at p. 482.) The mere showing by defendants that Nationwide had acquired the property pursuant to a full credit bid did not begin to meet their burden.[6]

6.  *Full credit bid does not preclude First Commercial's causes of action for negligent misrepresentation and breach of contract.*

The remaining issue is the effect of Nationwide's full credit bid on First Commercial's causes of action for negligent misrepresentation[7] and breach of contract.

---

[5]Reece also contends *Commonwealth Mortgage Assurance Co. v. Superior Court, supra,* 211 Cal.App.3d 508, is dispositive. However, that decision too is inapposite because it does not involve the compelled repurchase of a loan. There, the foreclosing lender made a full credit bid and then submitted a claim to the mortgage insurance company under policies of mortgage guaranty insurance. (*Id.* at p. 512.) The insurer then sued the *borrowers*, alleging that false representations were made by the borrowers to induce the insurer to provide mortgage guaranty insurance for the loans. (*Id.* at p. 513.) *Commonwealth* held a full credit bid precludes both the lender's and insurer's causes of action for fraud. (*Id.* at p. 520.) "If the creditor-beneficiary makes a full credit bid for the property and is the successful bidder, then the proceeds from the trustee's sale are exactly sufficient to satisfy the debt, there is no deficiency and no surplus. [Citation.] In this event, the creditor has suffered no damages and cannot recover under an insurance policy. [Citations.]" (*Ibid.*)

[6]We note the trial court sustained defendants' evidentiary objections to First Commercial's extensive *opposing* declaration and supporting exhibits. Nonetheless, the moving papers on summary judgment did not meet their burden in the first instance. Consequently, the burden did not shift to First Commercial to show that a triable issue of material fact exists. (Code Civ. Proc., § 437c, subd. (*o*)(2).)

[7]The tort of negligent misrepresentation consists of making a false statement honestly believing it is true but without reasonable ground for such belief. (*Yanase v. Automobile Club of So. Cal.* (1989) 212 Cal.App.3d 468, 472-473 [260 Cal.Rptr. 513, 2 A.L.R.5th 1084]; Civ. Code, §§ 1710, subd. 2, 1572, subd. 2; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 720 et seq., p. 819 et seq.)

In *Alliance,* the court considered whether as a result of its full credit bids, the lender "could demonstrate neither justifiable reliance nor actual damages" (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at p. 1246), both essential elements of fraud. (*Id.* at p. 1239.) *Alliance* held "to the extent defendants made fraudulent misrepresentations on which [a lender] justifiably relied in making its full credit bid, they cannot assert the full credit bid rule as a defense to [the lender's] *fraud* claims." (*Id.* at p. 1246, fn. 8, italics added.)

*Alliance's* holding was analyzed in *Pacific Inland Bank v. Ainsworth* (1995) 41 Cal.App.4th 277 [48 Cal.Rptr.2d 489]. In *Pacific Inland Bank,* after the lender made a full credit bid and suffered a loss, it sued, alleging the appraiser's breach of contract and negligence resulted in the loan being undersecured. (*Id.* at pp. 279-280.) *Pacific Inland Bank* held *Alliance's* holding was limited to *fraud-based* claims and therefore the full credit bid rule still barred the lender's nonfraud claims against third party nonborrowers. (*Id.* at pp. 282-283.) *Pacific Inland Bank* concluded: "[A]bsent a fraud claim, a full credit bid estops a plaintiff from establishing damages." (*Id.* at p. 283.)

However, leaving aside whether *Pacific Inland Bank* was correctly decided,[8] it is inapplicable to our facts. Here, unlike in that case, the plaintiff is not the lender which made the full credit bid, but rather, the lender which sustained damages from a compelled repurchase of the loan. Under these circumstances, the rationale for applying the full credit bid rule is absent. Because Nationwide made the full credit bid and First Commercial's damages were incurred as a result of the compelled repurchase, there is no issue here as to whether First Commercial justifiably relied on defendants' representations in making a full credit bid, or whether the full credit bid operated as an admission of the property's value by First Commercial.

*Pacific Inland Bank* is inapposite for the additional reason that despite the negligence label, the tort of negligent misrepresentation is a form of deceit, without the element of scienter. (*Gagne v. Bertran* (1954) 43 Cal.2d 481, 487, fn. 4 [275 P.2d 15].) Thus, with respect to the tort of negligent misrepresentation, if a repurchasing lender such as First Commercial can show justifiable reliance for purposes of intentional fraud by demonstrating it relied upon false representations in extending the loan and then selling it to Nationwide, by a parity of reasoning the same showing is sufficient to establish justifiable reliance for purposes of a negligent misrepresentation claim. Similarly, irrespective of whether the cause of action is intentional or

---

[8]See discussion in *Kolodge v. Boyd* (2001) 88 Cal.App.4th 349, 369-372 [105 Cal.Rptr.2d 749].

negligent misrepresentation, First Commercial can show it sustained damages as a consequence of the compelled repurchase, notwithstanding Nationwide's full credit bid. Therefore, Nationwide's full credit bid does not bar First Commercial's cause of action for negligent misrepresentation.[9]

Turning to the breach of contract claim, the elements of the cause of action are the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant and damages. (4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 476, p. 570.) Here, First Commercial alleges that prior to funding the loan, it and Andrade entered into a written agreement wherein Andrade agreed to indemnify First Commercial for any loans found to be fraudulent or not in compliance with industry underwriting requirements; however, Andrade had refused to repurchase the subject loan. The rule that a full credit bid operates as an admission by the bidding lender of the property's value does not preclude a claim by the repurchasing lender that it suffered damages as a consequence of the defendant's breach of said agreement.

In sum, we conclude Nationwide's full credit bid has no bearing on First Commercial's causes of action for negligent misrepresentation and breach of contract.

## DISPOSITION

The judgment is reversed. First Commercial to recover costs on appeal.

Croskey, J., and Kitching, J., concurred.

---

[9]*Kolodge v. Boyd, supra,* 88 Cal.App.4th 349, involving an action by a lender against an appraiser, likewise held "[w]hat the *Alliance* court said about a suit for intentional misrepresentation can be said with equal force about a suit for negligent misrepresentation." (*Id.* at p. 365.) *Kolodge* concluded the negligent misrepresentation claim was not barred by the full credit bid rule. (*Id.* at p. 372.)